PER CURIAM.
The Supreme Court summarily remanded this Tax Court matter to us on October 20, 2000 for our consideration of issues that the prevailing plaintiffs, William J. Brown, Jr. and Irene E. Brown[1] (the taxpayers), raised on appeal which the Tax Court had decided against them but which we did not address in our prior unpublished opinion. Brown v. Borough of Glen Rock, A-4279-98 (June *370 13, 2000).[2] Those issues relate to the taxpayers’ claim of “discrimination” and the “true value” of the property. Accordingly, we address these issues now.
The taxpayers filed this challenge to the Bergen County Board of Taxation’s affirmance of them 1997 tax assessment in the Small Claims Division of the Tax Court. R. 8:11. The taxpayers’ property was assessed at $235,000, allocated $164,000 to the land and $71,400 to the improvements.
The property in question is designated on the tax map of the Borough of Glen Rock as block 76, lot 2 and is known as 675 Lincoln Avenue (the property). We described the property and the circumstance that triggered plaintiffs’ challenge to the assessment in our prior opinion, as follows:
The property consists of a .252 acre parcel of land, with fifty-five feet of “front footage,” and contains a one and one-half story residence consisting of 2,231 square feet of livable space. The lot is located in the A-2 residential district. The zoning ordinance governing that district requires front footage of eighty feet. Hence, the residence is on an undersized non-conforming lot. The 1997 valuation assessed the property for the deficiency of the front footage by increasing the assessed value of the land by $30,000.
In their appeal to the Tax Court, the taxpayers sought a determination that their property was assessed at greater than the fail- market value and at a ratio which exceeded the common level of assessments in the taxing district (commonly referred to as •discrimination).[3] The Tax Court judge rejected the four adjusted comparable sales relied on by the taxpayers, concluded that the taxpayers had failed to prove the “true value”, i.e., fan- márket value of then- property, and determined that the presumption of *371 correctness which attaches to the county board’s judgment had not been overcome. The Tax Court judge also determined that even if the taxpayers had demonstrated the “true value” of their property, they had failed to present sufficient proof to sustain a challenge to the assessment based on discrimination. In particular, the Tax Court judge determined that the taxpayers’ proof of discrimination was insufficient and their comparable sales analysis flawed. Accordingly, he affirmed the county board judgment which had affirmed the original assessment.
On appeal, we determined that the presumption which normally attaches to assessments and county board judgments was not warranted because the Borough of Glen Rock had not adequately explained the factual basis for its having increased the assessment on all undersized lots by $30,000. We, therefore, determined that the assessment of the property should be reduced by $30,000.[4]
Following the remand by the Supreme Court, and pursuant to our request, by letter dated November 1, 2000, the taxpayers identified the specific issues of which they seek “further review” as Points VIII, IX and X in our unpublished opinion. We reproduce the point headings here.

POINT VIII

EVEN WITHOUT A COMPREHENSIVE ANALYSIS OF SALES OF PROPERTIES AS COMPARED TO ASSESSMENTS, THE GENERAL COEFFICIENT OF DEVIATION INDICATES THE ABSENCE OF A COMMON LEVEL IN 1997, THE YEAR OF GLEN ROCK’S REVALUATION.

POINT IX

THE IMPLICATIONS OF THE TAX COURT’S RULING THAT RESIDENTIAL PROPERTY OWNERS WITHOUT EXPERT WITNESSES MAY ONLY USE THE SALES COMPARISON APPROACH DEPRIVES SUCH TAXPAYERS OF THE BENEFIT OF “UNIFORM RULES” AVAILABLE TO INCOME PRODUCING PROPERTY OWNERS. (Not raised below)

POINT X

*372 BASED UPON THE DISCRIMINATORY ASSESSMENT OF THE APPELLANTS’ PROPERTY, RELIEF SHOULD BE PROVIDED BY APPLICATION OF THE DIRECTOR’S 1997 SCHOOL AID RATIO FOR GLEN ROCK.[5]
We have carefully considered the taxpayers’ contentions in light of the record and applicable law and conclude they are of insufficient merit to warrant a detailed opinion. R. 2:11-3(e)(1)(E). However, in light of the remand, we deem it appropriate to add the following observations.

A. The Taxpayers’ Claim of Discrimination (Point VIII).

The taxpayers claimed the Borough had discriminated against them and those similarly situated (those with undersized lots in the A-2 residential district, whose assessments had been increased on “phantom land”). The taxpayers asserted they were relying on M.I. Holdings, Inc. v. Jersey City, 12 N.J.Tax 129 (Tax 1991), to support them claim.
In rejecting the taxpayers’ discrimination claim in this case, the Tax Court judge stated:
[e]ven if a true value had been proved, because chapter 123 is not applicable in revaluation years and the exception recognized in MR [sic] Holdings versus Jersey City that allows the application of a ratio in a revaluation year requires very extensive proof to demonstrate first that the revaluation did not across the board result in assessments at true value, and secondly, that the evidence would demonstrate an appropriate ratio of assessment to true value that could be applied. But we don’t have that kind of proof in this case.
We agree with the Tax Court judge that the taxpayers’ proofs do not support their claim of discrimination.
The taxpayers misapprehend the meaning of the term “discrimination” in the context of a tax appeal. It does not involve bad motive or malice. As noted by the Tax Court judge at trial, the term “discrimination” in a revaluation year means only a claim that the revaluation resulted in assessments generally at levels below true value.
*373 When a taxpayer seeks discrimination relief, the courts generally apply the rules set down in N.J.S.A. 54:51A-6 (L. 1973, c. 123) (commonly referred to as “Chapter 123”). See generally Pannaic Street Realty v. Garfield, 13 N.J.Tax 482, 484-86 (Tax 1994). This statute provides for a presumptive common level of assessment, i.e., the Director’s average ratio. As recognized by the court in M.I. Holdings, however, “the statute by its own terms ... is inapplicable in a revaluation year. N.J.S.A. 54:51A-6(d).” 12 N.J.Tax at 142. As that case states, the reason that Chapter 123 does not apply in a revaluation year is that there is a presumption that in a revaluation year all properties are assessed at true value, i.e., 100% of fair market value. The year 1997 was a revaluation year in the Borough of Glen Rock.
Relief from a discriminatory assessment may be afforded under Chapter 123 in a revaluation year but only in “the most extreme or severe circumstances.” Ibid, (quoting Murnick v. City of Asbury Park, 95 N.J. 452, 463, 471 A.2d 1196 (1984)). In M.I. Holdings, the taxpayers presented a detailed two-year sales ratio study to demonstrate that there was a common level of assessment well below 100%. The court refused to adopt the taxpayer’s determination of a common level but was satisfied that the taxpayer had proven that the common level was something less than 100%. Id. at 142-43. Accordingly, the court applied the Chapter 123 ratio to its finding of true value. It was the taxpayers’ detailed sales ratio study which formed the basis for the Tax Court judge’s decision to apply the Director’s Chapter 123 ratio in M.I. Holdings.
Unlike the taxpayer in M.I. Iloldingn, the taxpayers in this case did not perform any sales ratio study, despite the Tax Court judge’s admonition during a discovery motion several months before trial that in order for the taxpayers to rebut the presumption that the revaluation attained true value, i.e. 100%, they would need “a comprehensive analysis of sales properties within the taxing district [comparing them to the assessments].” Accordingly, there is no basis in the factual record to find “extreme or severe circumstances” to provide discrimination relief in *374 this revaluation year. There is no merit to plaintiffs’ claim that requiring them to hire consultants to analyze ratios denies them equal protection under the Fourteenth Amendment.[6] While there is no requirement that a taxpayer use expert testimony to support his or her claim of value, the taxpayer is not relieved of the obligation to provide the Tax Court with competent and sufficient evidence of such value. See Otelsberg v. Bloomfield, 18 N.J.Tax 243, 249 (Tax 1999). The principle is applicable to a claim of discrimination. See M.I. Holdings, supra, 12 N.J. Tax 129 and Calton Homes, Inc. v. Township of West Windsor, 15 N.J.Tax 231 (Tax 1995). Accordingly, we are satisfied that the Tax Court judge properly denied the taxpayers’ request for discrimination relief.
B. The Comparable Sales Analysis, the Glen Wall Associates[7] Issue and Comparable Sales Analysis — Adjustments (Points IX and X)
At the hearing, the taxpayers produced no expert testimony. Rather, the taxpayers attempted, through the testimony of Mr. Brown, to establish the true value of their property by putting forth four alleged comparable sales that Mr. Brown had personally researched and prepared. Mr. Brown conceded, however, that he was not an expert in real estate appraisal or methodology.
At the trial, the taxpayers maintained that the comparables upon which they were relying were only being used to establish a value for the land, “conceding that the assessed value of [the] improvements on the property [was] correct.” Thus, the taxpayers’ overall approach at the hearing was to use the sales compara- *375 bles to establish a land value only for the subject property, and then to add to that figure the Borough’s assessed value of the property’s improvements.[8]
In a supplementary written decision issued on February 16, 1999, the Tax Court judge rejected the taxpayers’ sales compara-bles, stating:
[T]he comparable sales analysis offered by plaintiff failed to provide any evidence of the market value of the subject property, since it addressed only the value of the land. It is well established that the division of an assessment between land and improvements is an administrative action that does not create two separately contestable assessments. In re Appeals of Kents 2124 Atlantic Avenue, Inc. 34 N.J. 21, 33, 34[, 166 A.2d 763] (1961); National Westminster Bank v. Brigantine City, 11 N.J.Tax 502 (Tax 1991). A taxpayer seeking to establish a taxable value lower than the assessment must demonstrate the value of the entire property, not merely the value of either land or improvements. I do not consider the decision in Glen Wall Assocs. /v./ Wall Tp., 99 N.J. 265[, 491 A.2d 1247] (1985) to be contrary. Glen Wall does not mention and certainly does not override Kents. It appears, rather to recognize that, in the concrete circumstances of the employment of the building residual valuation method in a given case, there may be no dispute as to land value.
In Point IX of their appellate brief, the taxpayers argue that the Tax Court judge erred in concluding that they could not prove the “true value” of their property by challenging only the land portion of the assessment. We reject the argument and affirm the Tax Court judge’s ruling substantially for the reasons expressed by the judge, adding only these observations.
Decisions of the Tax Court are accorded a highly deferential standard of review. See Glenpointe Assoc. v. Township of Teaneck, 241 N.J.Super. 37, 46, 574 A.2d 459 (App.Div.), certif. denied 122 N.J. 391, 585 A.2d 392 (1990) (“[t]he judges presiding in the Tax Court have special expertise; for that reason their findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them”).
*376 Piecemeal challenges to assessments of real property are not permitted except under exceptional circumstances. Separation of land and improvement assessments is simply an “administrative” act that does not relieve a taxpayer from proving a value for his or her property as a whole. See generally In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 33-34, 166 A.2d 763 (1961); David E. Crabtree, State and Local Taxation, 43 New Jersey Practice, § 5.1 at 58 (1999) (observing that “New Jersey courts have held that the assessments of land and improvements may not be separately contested, thus, the taxpayer may not appeal the land assessment while declining to challenge the improvement assessment or vice versa”) (emphasis added); Texas Eastern Transmission Corp. v. East Amwell Tp., 13 N.J.Tax 24, 34 (Tax 1992), aff'd, 18 N.J.Tax 126 (App.Div.1999) (stating that “it has long been recognized that the division of an assessment between land and improvements is an administrative action that does not create two separately contestable assessments”).
The decision of the Court in Glen Wall Assocs. v. Township of Wall, supra, 99 N.J. 265, 491 A.2d 1247 (1985), does not undermine the validity of that longstanding principle, despite the taxpayers’ assertion to the contrary, because the building residual technique cannot be used to analyze true value where the property is not income-producing.[9]
There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given, date; applicable to different types of properties: the comparable sales method, capitalization of income and cost. Appraisal Institute, The Appraisal of Real Estate 81 (11th ed.1996). The building residual technique used in Glen Wall Assocs. is based on the capitalization of income approach. Obviously, any method which is based on a capitalization of income, such as the building residual technique, can only be used for income producing property. To apply the building residual technique, the appraiser must *377 obtain information on present land value, current net operating income (NOI), and land and building capitalization rates. Id. at 521. “The applicability and usefulness [of this technique] are extremely limited.” Ibid. For this reason, the land residual technique cannot be used for single family houses. The taxpayers themselves acknowledge that only the cost and sales comparison approaches are generally acceptable appraisal approaches for valuing single family residences.
In sum, the hybrid building-land residual technique proposed by the taxpayers, namely cost as to the improvements, and land as valued in Glen Wall Ahhocs., is not an accepted technique; it is not consistent with standard appraisal practice and is without basis in the law. The methodology utilized in Glen Wall Assoc,s. is limited to the valuation of income producing properties only and cannot be extrapolated by the taxpayers to value a single family residential property.
Nor does the case of Springfield Tp. v. Weinberg, 178 N.J.Super. 83, 428 A.2d 115 (App.Div.1981) provide support for the taxpayers’ use of its hybrid valuation approach or its claim of discrimination because that case involved an interpretation of the Freeze Act, N.J.S.A. 54:3-26. In fact, there we recognized that “the assessment of real property is, despite its assignment of separate land and building values, essentially a unitary concept pertaining to total true value for purposes of imposition of an ad valorem tax.” Id. at 91, 428 A.2d 115.

C. Coucl'mion

Our prior determination granted the taxpayers a $30,000 reduction of their assessment. We now hold that they are not entitled to discrimination relief under N.J.S.A. 54:51A-6 (Chapter 123) because they have not demonstrated by means of a sales ratio study, or otherwise, that they are entitled to such relief in a revaluation year. In addition, we agree with the Tax Court judge that the methodology utilized by the taxpayers is flawed and insufficient and cannot support their claim for a further reduction in the assessment of their property.
*378 The judgment is affirmed, except we remand the matter to the Tax Court for entry of an amended judgment reflecting the reduction in the county board judgment by $30,000, as directed in our prior opinion.

 Plaintiffs proceeded pro se before the Tax Court and on appeal.

 Brown v. Borough of Glen Rock, C-227 (September Term 2000) 50,017.

 At trial, the taxpayers essentially asserted four claims: (1) Glen Rock’s motive for increasing their assessment and the methodology utilized in valuing their land resulted in an unjustified $30,000 increase in their assessment for "phantom land," which was discriminatory; (2) the phantom land issue aside, the fair market value of the property was $170,000 to $180,000, using a hybrid appraisal methodology; (3) the Director’s 1997 school aid/1998 chapter 123 ratio of 92.79% for Glen Rock should be applied to the taxpayers’ claimed true value of $170,000, reducing their assessment to $158,000; and (4) the taxpayers áre "appealing on the basis that [their] constitutional rights were violated."

 This reduction was the relief the taxpayers had specifically requested in their "Motion to Deduct Assessment for Non-Existing Land." Glen Rock acknowledged the assessment had been increased by that amount, but was unable, or unwilling, to disclose the basis for that determination. As an equitable remedy, we reduced the assessment by $30,000, and Glen Rock did not appeal.

 The issues raised in the point headings are interrelated. The point headings themselves, however, do not always reflect the actual arguments found within the body of the particular heading. In addition, the issues raised under these point headings appear not to have been articulated to the Tax Court judge in the same manner in which they were presented to us on the appeal.

 On appeal, for the first time, in support of their claim of discrimination, plaintiffs dispute the validity of the Director's determination of 14.75% as Glen Rock's coefficient of deviation for the 1997 year and assert, without appropriate data, that it should be higher. As the issue of coefficient of deviation and data contained in the taxpayers' appellate brief was not a part of the trial record, we will not address it. R. 2:5-4(a); County of Bergen v. Bor. of Paramus, 79 N.J. 302, 309 n. 2, 399 A.2d 616 (1979).

 Glen Wall Assoc. v. Wall Tp., 99 N.J. 265, 491 A.2d 1247 (1985).

 The Tax Court judge pointed out to Mi. Brown early in the proceedings that the methodology he was utilizing was an unacceptable means of arriving at an alternative true value lor the property, but as an accommodation to their status as pro se litigants, the judge permitted Mi. Brown to run through and explain the reasoning and mathematical calculations underlying his four sales comparables.

 Even if Glen Wall Assocs. can be read as inconsistent with Kents, it does not overrule Kents inasmuch as the Glen Wall Assocs. Court did not mention Kents.