NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Patrick DeAlmeida**
 **Presiding Judge**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625-0975
(609) 815-2922 x54620

August 30, 2017

George H. Hulse, Esq.
Hulse & Wynter, LLC
1624 Jacksonville Road, Suite 1
Burlington, New Jersey 08016

Tyler T. Prime, Esq.
Prime Law
307 Fellowship Road, Suite 207
Mount Laurel, New Jersey 08054

> Re:  Beneficial Mutual Savings Bank v.
> Township of Mount Laurel
> Docket No. 017041-2013
> Docket No. 014319-2014

Dear Counsel:

This letter constitutes the court's opinion after trial in the above-referenced matters challenging the assessments on real property for tax years 2013 and 2014. For the reasons stated more fully below, the assessments are affirmed.

## I. Procedural History and Findings of Fact

The following findings of fact and conclusions of law are based on the evidence and testimony admitted at trial.

Plaintiff Beneficial Mutual Savings Bank is the owner of real property in defendant Mount Laurel Township. The parcel is designated in the records of the municipality as Block 301.11, Lot 1, and is commonly known as 3220 Route 38.

The parcel is .91 acres on which is situated one building designed and used as a retail bank branch. The one-story, 2,540-square-feet structure and was erected approximately 25 years prior to the valuation dates. The building houses a typical retail banking space, with a customer service area, bank counters, an employee break room, and other adequate facilities in good condition. In addition, the structure features a four-lane, drive-through facility with an overhead canopy and three vacuum tube mechanisms. There is one ATM on the exterior of the building and eighteen parking spaces.

The parcel has 250 feet of frontage on Route 38 East. Approximately 20 years ago, Route 38 was widened from four lanes with no solid divider to eight lanes with a cement divider. The expansion of the highway affected the property in two significant ways. First, prior to the widening, the bank branch sat a distance from the roadway. The widening, which was accomplished through a partial taking of the subject property, resulted in a lane of traffic with a 55-mile-per-hour speed limit immediately adjacent to the entrance to the property. There is no deceleration lane or shoulder in front of the property, making entry to the property more dangerous. In addition, the taking eliminated several parking spaces.

Second, because of the construction of a concrete divider westbound traffic on Route 38 does not have direct access to the subject property. To enter the property, costumers in the

2

westbound lane of the highway must pass the subject property, travel approximately a quarter mile to an intersection controlled by a traffic signal, cross to the eastbound lanes and travel approximately a quarter mile back east. If a consumer intends to continue in the westbound direction after visiting the property, the consumer must exist the property to a residential road adjoining the property and travel a quarter of a mile on that road to an intersection with Route 38 controlled by a traffic signal. Two roads adjoining the property provide access to a residential area off the highway.

The property is owner occupied and has never been subject to a lease. Expert testimony at trial conflicted with respect to the continued usefulness of the subject as a retail bank branch. Plaintiff's expert testified that the location and configuration of the property while conducive to an outdated model of banking, does not comport with current banking practices. According to the expert, banks previously constructed retail branches in residential neighborhoods to provide convenient services to customers who most often did their banking in person. The current model, according to the expert, is for banks to open fewer branches, and to locate those branches in more centralized, high traffic areas, such as pad sites at shopping centers. The current model also requires multiple bank branch ATMs, preferable indoors, given that in-person banking between a customer and a bank employee during business hours has become less the norm.

The municipality's expert, on the other hand, testified that the subject property is adequate for current banking practices. In support of his position, he points to the fact that as of the valuation dates, plaintiff continued to use the subject property as a retail bank branch. This is consistent with the history of the subject property, which has been owned by more than one bank, and has consistently been owner occupied and operated as a bank branch.

For tax years 2013, the subject property was assessed as follows:

| | |
|---|---|
| Land | $150,000 |
| Improvement | $200,000 |
| Total | $350,000 |

The Chapter 123 average ratio for the municipality for tax year 2013 is 52.19%. When the tax year 2013 average ratio for the municipality is applied to the assessment, the implied equalized value of this parcel is $670,627 ($350,000 ÷ .5219 = $670,627).

The municipality implemented a district-wide revaluation for tax year 2014. For that tax year, the subject property was assessed as follows:

| | |
|---|---|
| Land | $270,000 |
| Improvement | $259,900 |
| Total | $529,900 |

Because the municipality implemented a district-wide revaluation, the average ratio for tax year 2014 is presumed to be 100% and the assessment is presumed to reflect true market value. See N.J.S.A. 54:1-35a.

Plaintiff filed Petitions of Appeal with the Burlington County Board of Taxation challenging the tax year 2013 and 2014 assessments on the subject property. The county board thereafter entered Judgments affirming the assessments.

Plaintiff filed timely Complaints in this court challenging the Judgments of the county board for each tax year. The municipality filed a timely Counterclaim seeking to raise the assessment for tax year 2014 only.

During the two-day trial, each party presented an expert real estate appraiser who offered an opinion of the true market value of the subject property on each of the relevant valuation dates. There is no dispute that the witnesses were qualified to offer their expert opinions, summarized as follows:

| Tax Year | 2013 | 2014 |
|---|---|---|
| Valuation Date | 10/1/2012 | 10/1/2013 |
| Plaintiff's Expert | $ 375,000 | $ 360,000 |
| Defendant's Expert | $ 775,000 | $ 770,000 |

## II. Conclusions of Law

The court's analysis begins with the well-established principle that "[o]riginal assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). As Judge Kuskin explained, our Supreme Court has defined the parameters of the presumption as follows:

> The presumption attaches to the quantum of the tax assessment. Based on this presumption the appealing taxpayer has the burden of proving that the assessment is erroneous. The presumption in favor of the taxing authority can be rebutted only by cogent evidence, a proposition that has long been settled. The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be "definite, positive and certain in quality and quantity to overcome the presumption."
>
> [Ibid. (quoting Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985)(citations omitted)).]

The presumption of correctness arises from the view "that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law." Pantasote, supra, 100 N.J. at 413 (citing Powder Mill I Assocs. v. Township of Hamilton, 3 N.J. Tax 439 (Tax 1981)); see also Byram Twp. v. Western World, Inc., 111 N.J. 222 (1988). The presumption remains "in place even if the municipality utilized a flawed valuation methodology, so long as the quantum of the assessment is not so far removed from the true value of the property or the method

5

of assessment itself is so patently defective as to justify removal of the presumption of validity." Transcontinental Gas Pipe Line Corp. v. Township of Bernards, 111 N.J. 507, 517 (1988).

"The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Twp. v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998)(citation omitted); Atlantic City v. Ace Gaming, LLC, 23 N.J. Tax 70, 98 (Tax 2006). "In the absence of a R. 4:37-2(b) motion . . . the presumption of validity remains in the case through the close of all proofs." MSGW Real Estate Fund, LLC, supra, 18 N.J. Tax at 377. In making the determination of whether the presumption has been overcome, the court should weigh and analyze the evidence "as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves), employing the evidentiary standard applicable to such a motion." Ibid. The court must accept as true the proofs of the party challenging the assessment and accord that party all legitimate favorable inferences from that evidence. Id. at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995)). In order to overcome the presumption, the evidence "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters., LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003)(quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div.), certif. denied, 165 N.J. 488 (2000)), aff'd, 21 N.J. Tax 590 (App. Div. 2004).

Only after the presumption is overcome with sufficient evidence at the close of trial must the court "appraise the testimony, make a determination of true value and fix the assessment." Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982). If the court determines that sufficient evidence to overcome the presumption has not been produced, the

assessment shall be affirmed and the court need not proceed to making a value determination. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 312 (1992); Global Terminal & Container Serv. v. City of Jersey City, 15 N.J. Tax 698, 703-04 (App. Div. 1996).

The municipality did not move to dismiss the Complaints at the close of plaintiff's case. It did, however, argue in its post-trial submissions that the opinions of plaintiff's expert should be stricken as inadmissible net opinions. It is necessary to address this question before the court can determine whether plaintiff produced sufficient evidence to overcome the presumption of validity attached to the assessments and county board Judgments under review.

In order for an expert's opinion to be meaningful to the trier of fact, it must be based on credible facts and data. As set forth in Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002):

> In addition to determining whether a witness is qualified to testify as an expert, the trial court must also decide the closely related issue as to whether the expert's opinion is based on facts and data. Biunno, Current N.J. Rules of Evidence, comment 2 on N.J.R.E. 702 (2002). As construed by applicable case law, N.J.R.E. 703 requires that an expert's opinion be based on facts, data, or another expert's opinion, either perceived by or made known to the expert, at or before trial. Buckelew v. Grossbard, 87 N.J. 512, 524 (1981); Nguyen v. Tama, 298 N.J. Super. 41, 48-49 (App. Div. 1997). Under the "net opinion" rule, an opinion lacking in such foundation and consisting of bare conclusions unsupported by factual evidence is inadmissible. Johnson v. Salem Corp., 97 N.J. 78, 91 (1984), Buckelew, supra, 87 N.J. at 524. The rule requires an expert to "give the why and wherefore" of his or her opinion, rather than a mere conclusion. Jimenez v. GNOC Corp., 286 N.J. Super. 533 (App. Div.), certif. denied, 145 N.J. 374 (1996).

While the facts or data upon which the expert bases an opinion need not be admissible, they must be of a type "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject . . . ." N.J.R.E. 703. For an expert's testimony to be of any value,

it must have a proper foundation.  See Peer v. City of Newark, 71 N.J. Super. 12, 21 (App. Div. 1961), certif. denied, 36 N.J. 300 (1962).

The municipality argues that plaintiff's expert cited no data in support of his opinion that the subject property is not conducive to current banking practices.  This opinion informed the expert's view that on the valuation dates the subject property had a highest and best use as a property to be used by the owner or rented to a tenant for an office use.  In addition, the municipality points out that plaintiff's expert provided no explanation for the capitalization rate he selected under the income capitalization approach.

The court cannot conclude that the trial record contains so little support for the opinions of value of plaintiff's expert that they constitute inadmissible net opinions.  The expert testified that he had experience appraising bank properties and was generally familiar with banking practices.  He also reviewed a number of transactions involving the sale of bank branches and former bank branches in the subject's market.  Real estate appraisers routinely rely on this type of information to reach opinions of value.  The court concludes that the expert cited sufficient data to defeat a motion to strike his opinions of value as inadmissible net opinions.

With respect to the presumption of correctness, the court, as is required by controlling precedents, gives an indulgent view to the evidence adduced by plaintiff.  The taxpayer's expert, a licensed real estate appraiser, gave opinions of value for both tax years considerably below the implied equalized value of the assessments on the subject property.  Those opinions were based on an analysis of comparable sales, market rents, and other factors generally accepted in the appraisal field for reaching an opinion of value of real property.  The expert used both the comparable sales and income capitalization approaches, two widely recognized methods for determining the value of real property.  Giving the benefit of any doubt to the expert's opinions,

8

and without analyzing the credibility of his testimony, the court concludes that the trial record contains sufficient evidence to overcome the presumptions of validity at issue in these matters.[1]

The court's inquiry, however, does not end here. Once the presumption is overcome, the "court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co., supra, 127 N.J. at 312 (quotations omitted). "[A]lthough there may have been enough evidence to overcome the presumption of correctness at the close of plaintiff's case-in-chief, the burden of proof remain[s] on the taxpayer throughout the entire case . . . to demonstrate that the judgment under review was incorrect." Id. at 314-15 (citing Pantasote, supra, 100 N.J. at 413).

A.      Approaches to Valuation.

"There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the comparable sales method, capitalization of income and cost." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div.)(citing Appraisal Institute, The Appraisal of Real Estate 81 (11th ed. 2006)), certif. denied, 168 N.J. 291 (2001). "There is no single determinative approach to the valuation of real property." 125 Monitor Street, LLC v. City of Jersey City, 21 N.J. Tax 232, 237 (Tax 2004)(citing Samuel Hird & Sons, Inc. v. City of Garfield, 87 N.J. Super. 65, 72 (App. Div. 1965); ITT Continental Baking Co. v. Township of East Brunswick, 1 N.J. Tax 244 (Tax 1980)),

---

[1]      The court also concludes that the municipality's expert, who relied on both the comparable sales and income capitalization approaches to value the subject property, offered sufficient evidence to overcome the presumption of validity attached to the assessment and county board Judgment for tax year 2014. The municipality filed a Counterclaim for tax year 2014, alleging that the assessment set during the districtwide revaluation was below the subject property's true market value. The expert, applying long-accepted appraisal techniques and using data of the type recognized as valid in the appraisal field, offered an opinion of value for the subject property in excess of the tax year 2014 assessment.

aff'd, 23 N.J. Tax 9 (App. Div. 2005). "The choice of the predominate approach will depend upon the facts of each case and the reaction of the experts to those facts." Id. at 238 (citing City of New Brunswick v. Division of Tax Appeals, 39 N.J. 537 (1963); Pennwalt Corp. v. Township of Holmdel, 4 N.J. Tax 51, 61 (Tax 1982)).

Both experts employed both the comparable sales and income capitalization approaches to valuing the subject property. The income capitalization approach is the preferred method of estimating the value of income producing property. Parkway Village Apartments Co. v. Township of Cranford, 108 N.J. 266, 270 (1987); Hull Junction Holding Corp. v. Borough of Princeton, 16 N.J. Tax 68, 79 (Tax 1996). "In the income capitalization approach, an appraiser analyzes a property's capacity to generate future benefits and capitalizes the income into an indication of present value." Appraisal Institute, The Appraisal of Real Estate 445 (13th ed. 2008).

Key to determining which approach is most likely to lead to a credible determination of true market value is a finding with respect to the highest and best use of the subject property.

In Clemente v. Township of South Hackensack, 27 N.J. Tax 255, 267-69 (Tax 2013), aff'd, 28 N.J. Tax 337 (App. Div. 2015), Judge Andresini succinctly explained the legal precedents that guide this court in making a highest and best use determination:

> For property tax assessment purposes, property must be valued at its highest and best use. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 300-01, 604 A.2d 580 (1992). "Any parcel of land should be examined for all possible uses and that use which will yield the highest return should be selected." Inmar Associates, Inc. v. Township of Edison, 2 N.J. Tax 59, 64 (Tax 1980). Accordingly, the first step in the valuation process is the determination of the highest and best use for the subject property. American Cyanamid Co. v. Township of Wayne, 17 N.J. Tax 542, 550 (Tax 1998), aff'd, 19 N.J. Tax 46 (App. Div. 2000). "The concept of highest and best use is not only fundamental to valuation but is a crucial determination of market value. This is why it is the first and most important step in the valuation process." Ford Motor Co. v.

Township of Edison, 10 N.J. Tax 153, 161 (Tax 1988), aff'd o.b. per curiam, 12 N.J. Tax 244 (App. Div. 1990), aff'd, 127 N.J. 290, 604 A.2d 580 (1992); see also Gen. Motors Corp. v. City of Linden, 22 N.J. Tax 95, 107 (Tax 2005).

The definition of highest and best use contained in The Appraisal of Real Estate, a text frequently used by this court as a source of basic appraisal principles, has remained relatively constant for all of the years under appeal. Highest and best use is defined as:

> The reasonably probable and legal use of vacant land or improved property that is physically possible, appropriately supported, and financially feasible and that results in the highest value.
>
> [Appraisal Institute, The Appraisal of Real Estate, 22 (13th ed. 2008).]

The highest and best use analysis requires sequential consideration of the following four criteria, determining whether the use of the subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive. Ford Motor Co., supra, 10 N.J. Tax at 161; see also The Appraisal of Real Estate at 279. Implicit in this analysis is the assumption that the proposed use is market-driven; in other words, that it is determined in a value-in-exchange context and that there is a market for such use. WCI-Westinghouse v. Township of Edison, 7 N.J. Tax 610, 616-17 (Tax 1985), aff'd o.b. per curiam, 9 N.J. Tax 86 (App. Div. 1986). A highest and best use determination is not based on value-in-use because the determination is a function of property use and not a function of a particular owner's use of subjective judgment as to how a property should be used. See Entenmann's Inc. v. Borough of Totowa, 18 N.J. Tax 540, 545 (Tax 2000). The highest and best use of an improved property is the "use that maximizes an investment property's value, consistent with the rate of return and associated risk." Ford Motor Co., supra, 127 N.J. at 301, 604 A.2d 580. Further, the "actual use is a strong consideration" in the analysis. Ford Motor Co., supra, 10 N.J. Tax at 167.

Highest and best use is not determined through subjective analysis by the property owner. The Appraisal of Real Estate at 279. The proper highest and best use requires a comprehensive market analysis to ascertain the supply and demand characteristics of alternative uses. See Cherry Hill, Inc. v. Township of Cherry Hill, 7 N.J. Tax 120, 131 (Tax 1984), aff'd, 8 N.J. Tax 334 (App. Div.

1986). Additionally, the proposed use must not be remote, speculative, or conjectural. Id. If a party seeks to demonstrate that a property's highest and best use is other than its current use, it is incumbent upon that party to establish that proposition by a fair preponderance of the evidence. Penn's Grove Gardens, Ltd v. Borough of Penns Grove, 18 N.J. Tax 253, 263 (Tax 1999); Ford Motor Corp., supra, 10 N.J. Tax at 167. Property should be assessed in the condition in which it is utilized and the burden is on the person claiming otherwise to establish differently. Highview Estates v. Borough of Englewood Cliffs, 6 N.J. Tax 194, 200 (Tax 1983).

The parties' experts offered conflicting opinions with respect to the highest and best use of the subject property. Plaintiff's expert offered the opinion that the highest and best use of the subject was its continued use as a retail bank branch for a limited period to be followed by the use of the building to house an office, pharmacy, or other use. He based this opinion, in large part, on his view that advances in retail banking have rendered the improvements on the subject property obsolete. Defendant's expert, on the other hand, offered the opinion that the highest and best use of the subject property is its continued use as a retail bank branch. He supported his opinion with the observation that for approximately 25 years prior to the valuation dates the subject has been operated as an owner-occupied retail bank branch without interruption.

The court finds the opinion of defendant's expert on this point to be more credible. While plaintiff's expert identified sales of vacant bank branches in the subject's market for uses other than as a bank branch, the record contains undisputed evidence that for more than two decades the owners of the subject property have used it as a retail bank branch, including on the relevant valuation dates. Nothing in the record supports the proposition that an alternative use for the subject property would, more likely than not, be the intention of a purchaser of the subject property on the valuation dates. While there may well have been a number of changes and innovations in the banking market in recent years, it cannot be disputed that those changes have not resulted in

12

the closure of the retail bank branch at the subject property. The court's conclusion with respect to the subject property's highest and best use is critical to the court's analysis, as the most credible evidence of value will be sales or leases of properties with the same highest and best use as the subject.

B.    Income Capitalization Approach.

Determining the value of real property pursuant to the income capitalization approach can be summarized as follows:

$$
\begin{array}{l}
\qquad\text{Market Rent}\\
\underline{\text{x}\qquad\text{Square Footage}}\\
\qquad\text{Potential Gross Income}\\
\\
\underline{\text{-}\qquad\text{Vacancy and Collection Losses}}\\
\qquad\text{Effective Gross Income}\\
\\
\underline{\text{-}\qquad\text{Operating Expenses}}\\
\qquad\text{Net Operating Income}\\
\\
\underline{\div\qquad\text{Capitalization Rate}}\\
\qquad\text{Value of Property}
\end{array}
$$

See Spiegel v. Town of Harrison, 19 N.J. Tax 291, 295 (App. Div. 2001), aff'g, 18 N.J. Tax 416 (Tax 1999); Appraisal Institute, The Appraisal of Real Estate 466 (13th ed 2008).

"Central to an income analysis is the determination of the economic rent, also known as the 'market rent' or 'fair rental value.'" Parkway Village Apartments, supra, 108 N.J. at 270. This differs from the actual rental income realized on the property, which may be below market rates. Parkview Village Assocs. v. Borough of Collingswood, 62 N.J. 21, 29-30 (1972). However, actual income is a significant probative factor in the inquiry as to economic income. Id. at 30. "Checking actual income to determine whether it reflects economic income is a process of sound appraisal

judgment applied to rentals currently being charged for comparable facilities in the competitive area." Ibid.

The opinions of value offered by plaintiff's expert under the income capitalization approach for both tax years lack credibility because his opinion of market rent is not supported by competent evidence. First, the expert reached his opinion of market rent using only rental rates offered by property owners, not rents reflected in actual leases. Each of the expert's comparable "leases" were not actually leases. Instead, the expert identified ranges of asking rents for various properties and from that range selected had he described as "typical" rents or "average" rents. It has long been established in this court that this approach to determining market rent does not produce a credible opinion of value.

Shortly after the formation of this court, Judge Andrew issued his opinion in Korvettes Home Furnishing Center v. Borough of Elmwood Park, 1 N.J. Tax 287 (Tax 1980). When determining the value of a parcel under the income capitalization approach, the court was presented with an expert appraiser's opinion of market rent derived, in part, from three "rentals" which "were not rentals but were only buildings available for rent with an indication as to the owners' asking rental price." Id. at 291. Judge Andrew held that

> I find that offers to rent do not assist in the search for fair market rental primarily because they represent only one half of the necessary equation, i.e., that rental which may be what an owner wants but not necessarily the rental that a prospective tenant would be willing to pay.
>
> *   *   *
>
> Lease agreements of comparable space must be reviewed in order to arrive at an estimate of economic rental which the subject could be expected to produce in the rental market for the years in question.
>
> [Ibid.]

This holding has been followed by the court on a number of occasions. <u>Harrison Realty Corp. v. Town of Harrison</u>, 16 <u>N.J. Tax</u> 375, 383 n.3 (Tax 1997)("Lease offerings, like sales offerings, are not evidentiary and may not be considered in determining a property's economic rent."), <u>aff'd</u>, 17 <u>N.J. Tax</u> 174 (App. Div.), <u>certif. denied</u>, 153 <u>N.J.</u> 213 (1998); <u>Town of Irvington v. 1125-1127 Clinton Avenue Assocs.</u>, 5 <u>N.J. Tax</u> 420, 427 (Tax 1983)("Lease offerings, like sales offerings, are not probative of market value.").

In addition, the rental offerings considered by plaintiff's expert related to space in large, Class A and Class B office buildings, wholly unlike the subject. The characteristics of those properties are too unlike those of the subject to be addressed through reasonable adjustments. Moreover, because the rental offerings were of office space, they do not comport with the court's conclusion of highest and best use of the subject property.

The opinions of value offered by defendant's expert under the income capitalization approach also lack credibility. Defendant's expert relied on five comparable leases to reach an opinion of market rent. While this is the sort of evidence that ordinarily would provide a credible basis for an opinion of market rent, it is the method by which the expert obtained the comparable lease information, and his lack of verification of that information, that undermines his opinion.

Defendant's expert obtained all of his comparable leases from the reports of other appraisers. It is apparent from his testimony at trial that the expert took no steps to verify the accuracy of the comparable lease data on which he relied. He did not review any of the actual leases. He did not even attempt to contact the parties to any of the leases, the brokers involved in negotiating the leases, or the appraisers from whose reports he copied the lease information. The expert testified that it was his experience that obtaining verification from parties to a lease or from

brokers was difficult, if not impossible. He, therefore, did not make any attempt at verification of the lease information before reaching an opinion of market rent here.

The expert testified that he trusted the appraisers from whom he obtained the lease information to have accurate information in their reports. He did not explain why those appraisers would have been able to verify the lease information, while it would have been futile for him to attempt to do so. In addition, the expert conceded that the leases, which were executed in 2003, 2004, 2005, 2007 and 2008, set rental rates many years before the valuation dates. The expert "stepped up" the rents to the 2012 and 2013 valuation dates without reading the actual provisions of the leases regarding periodic rent increases. He relied instead on the information obtained from other appraisers.

In a similar context, the Legislature recognized the need for real estate appraisal experts to verify the data on which they rely to reach an opinion of value. N.J.S.A. 2A:83-1 requires that:

> in any action or proceeding in the Tax Court, any person offered as a witness in any such action or proceeding shall be competent to testify as to sales of comparable land, including any improvements thereon . . . from information or knowledge of such sales, obtained from the owner, seller, purchaser, lessee or occupant of such comparable land, or from information obtained from the broker or brokers or attorney or attorneys who negotiated or who are familiar with or cognizant of such sales, which testimony when so offered, shall be competent and admissible evidence in any such action or proceeding.

While experts employing the income capitalization approach use comparable leases of real property, as opposed to comparable sales of real property, the rationale behind the statute is equally applicable here. Without having verified the accuracy of the lease information on which he relies, defendant's expert cannot credibly offer an opinion of market rent. The court can point to nothing

16

in the trial record providing support for a conclusion that the leases offered by defendant's expert are accurate and reliable as evidence.

Without credible evidence of market rent, the court cannot determine the true market value of the subject property on the relevant valuation date under the income capitalization approach.

C.      Sales Comparison Approach.

The sales comparison approach "usually provides the primary indication of market value in appraisals of properties that are not usually purchased for their income-producing characteristics." Appraisal Institute, The Appraisal of Real Estate, 419 (12th ed 2001). This method of valuation has been defined as "[a] set of procedures in which a value indication is derived by comparing the property being appraised to similar properties that have been sold recently, applying appropriate units of comparison, and making adjustments to the sales prices of the comparables based on the elements of comparison." Id. at 417.

1.      Tax Year 2013.

Plaintiff's expert identified six sales of former bank branches, five in Burlington County and one in nearby Camden County. He used four of the sales for tax year 2013. All of the sales were for uses other than as a retail bank branch. This fact alone is sufficient to exclude those sales from the court's analysis, given the court's highest and best use conclusion.

Moreover, plaintiff's expert pointed to no data in support of his adjustments to the sales prices, some of which were sizable. The sales took place from October 2009 to October 2012, with sales prices ranging from $300,000 to $637,500. The expert reduced the sales prices to an amount per square foot of improvements. The unit sales prices ranged from $100.73 per square foot to $161.38 per square foot. To the unit sales prices, the expert made adjustments based on market conditions, location, land size, building size, condition, and "other," which the expert

17

explained was an adjustment to account for deed restrictions in place at some of the comparable sales.

For example, to comparable sale No. 1, which took place in 2009, the expert made a negative 30% adjustment "due to declining market conditions of the Great Recession." He used the same rationale to make a negative 25% adjustment to his comparable sale No. 2, which took place in 2010. Although it is well known that market conditions generally were unfavorable in 2009, and declined for some period, the expert cites no data to support 30% and 25% adjustments to account for declines to the valuation date of October 1, 2012.

Similarly, the expert made a positive 25% adjustment to three of the comparable sales for location because the subject is "on Route 38 and in an area that generally commands higher values" than the comparable sales. One comparable sale was adjusted 20% upward because the sale property was subject to a five-year deed restriction prohibiting the use of the property for institutional lending and financial activities. The expert explains the basis for this adjustment merely as warranted "since the subject is not deed restricted." No data is cited in support of this adjustment.

Overall, the expert made gross adjustments of 75%, 75%, 65%, and 45%, and net adjustments of +45%, +40%, +45% and +20%. Adjustment of this size are indicative of properties that are too dissimilar from the subject to be credible evidence of value. See 125 Monitor Street, supra, 21 N.J. Tax at 243 ("Adjustments that are too large suggest a lack of comparability between the concerned sales and the subject property and present a misleading indication of the subject property's value.").

Defendant's expert relied on three comparable sales of retail bank branches to reach an opinion of value for tax year 2013. Two of the sales were of properties intended to continue to be

18

used as a retail bank branch. The third sale was of a property leased to a cellular telephone provider after the sale. None of the comparable sales were of property in Burlington County. Two of the sales were of property in Camden County and one sale was of property in Gloucester County. The sales took place in late 2012 and early 2013, close in time to the relevant valuation date of October 1, 2012. The expert reduced the sales prices to a price per square foot of improvements: $378, $468.75, and $265.91 per square foot.

To those sales prices per unit, the expert made adjustments for location, physical condition, and use. The gross adjustments totaled 30%, 35%, and 30%, with net adjustments of -10%, -25%, and +10%. The resulting adjusted sales price per units are $340.20, $351.56, and $292.50. The expert concluded a true market value of $325 per square foot, which equated to a true market value of $825,000.

The court is unable to use these three sales to reach a determination of true market value for the subject property. The expert admitted that his comparable sale No. 1, of a property on Brace Road in Cherry Hill Township, Camden County, was encumbered by a lease at the time of sale. The lease remained in place after the sale. As the expert acknowledged during cross-examination, the existing income stream from the lease likely had an effect on the sales price of that property. Yet, the expert made no adjustment for the lease. There is no data in the trial record on which the court could rely to make its own adjustment for the existence of a lease at the Brace Road property.

In addition, the expert's comparable sale No. 3 was of a property converted from a bank branch to a cellular telephone store. On cross-examination, the expert acknowledged that he did not investigate the sale and did not know if the cellular telephone store lease was in place at the time of the sale. He could not, therefore, opine with respect to whether an adjustment to the sales

19

price was necessary to account for an existing income stream at the time of sale. Moreover, the comparable sale, if purchased with the intention of leasing the former bank branch for another use, was of property with a highest and best use other than that found by the court (and proffered by defendant's expert) as the highest and best use of the subject property.

The expert's comparable sales Nos. 1 and 3, therefore, are not credible evidence of the true market value of the subject property. This leaves the court with only one comparable sale for tax year 2013. This single sale is an insufficient basis on which to reach a credible determination of true market value. See Phillips v. Township of Hamilton, 15 N.J. Tax 222, 227 (App. Div. 1995).

As a result, the court concludes that there is insufficient evidence in the trial record upon which to determine, by a preponderance of the evidence, the true market value of the subject property on October 1, 2012. The court will enter Judgment affirming the decision of the county board of taxation for tax year 2013.

2.      Tax Year 2014.

The comparable sales relied on by plaintiff's expert for tax year 2014 include two of the sales he relied on for tax year 2013 and two additional sales. The additional comparable sales suffer from the same defects as those he relied on for tax year 2013. The sales are of vacant bank branches to be used for other purposes. This is contrary to the highest and best use finding of the court with respect to the subject property. There is also a dearth of support for the expert's adjustments, many of which are large. For example, with respect to his comparable sale No. 4, the expert applied a gross adjustment of 65% and a net adjustment of +55%. There is little, if any, market data cited in support of these adjustments.

For tax year 2014, defendant's expert relied on the same three comparable sales that he relied on for tax year 2013. He added a fourth sale: of a vacant bank branch in Burlington County.

20

The fourth sale, however, was consummated with the intention of using the property for a purpose other than as a bank branch. This sale, therefore, is of limited value, given the court's determination with respect to the highest and best use of the subject property.

The court is again left with a single credible comparable sale. There is insufficient evidence in the trial record on which to make a determination, by a preponderance of the evidence, of true market value of the subject property on October 1, 2013. The court will enter Judgment affirming the decision of the county board of taxation with respect to tax year 2014.

Very truly yours,

/s/ Hon. Patrick DeAlmeida, P.J.T.C.

21