KUSKIN, J.T.C.
This local property tax appeal relates to the 1995 and 1996 assessments on property in the City of Jersey City designated as Block 1497, Lots 3M1 and 3M2 on the City Tax Map. For each year under appeal, the property was assessed as follows:
Land , $2,281,800
Improvements $2,683,900
Total $4,965,700
*407 For 1995, the applicable ratio under N.J.S.A. 54:l-35a to -35b, Chapter 123, was 89.43%. For 1996, the Chapter 128 ratio was 92.69%.
At the conclusion of the plaintiffs proofs, the defendant moved to dismiss the appeals pursuant to R. 4:37 — 2(b). I denied the motion, but, in setting forth the reasons for my denial, I did not specifically discuss the presumption of validity which attaches to an assessment. At the conclusion of the trial, in a bench opinion, I determined fair market value for the property as of the relevant assessing dates of October 1, 1994 and October 1, 1995 by relying primarily on the income approach, with limited consideration of the sales comparison approach. The income approach indicated a value for the subject property as of each of the assessment dates of $4,783,850. In my decision, I tempered this value with the sales comparison approach and determined a final value for the property of $4,950,000 as of each of the assessment dates. Defendant appealed my decision.
In an unpublished opinion, Lenal Properties v. City of Jersey City, No. A-2205-97T1 (App.Div. Dec. 3, 1998), the Appellate Division expressed concerns as to: (1) my failure to discuss the presumption of .validity in connection with my denial of the defendant’s motion under R. 4:37 — 2(b), (2) my analysis of comparable sales and comparable leases, (3) my “tempering” of the income approach value by the sales comparison approach, and (4) the three-tenths of one percent difference between the assessment for each year and my value determination. The Appellate Division remanded the matter with the following instructions:
A. explain how and why the presumption of validity attaching to the subject tax assessments was overcome, resulting in the denial of the defendant’s motion to dismiss at the close of plaintiffs proofs;
B. elucidate the court’s reasons for selecting the sales comparables upon which it relied;
*408 C. specify how those sales comparables were used to “temper” the income approach valuation determined by the court; and
D. explain the justification for using unadjusted lease comparables where the comparables were disparate in size and may have had other distinguishing characteristics.
I will address the foregoing items in order:
A. Overcoming the Presumption.
In denying the defendant’s motion to dismiss at the end of the plaintiffs case, I applied the evidentiary standard applicable under R. 4:37-2(b), that is, I accepted the plaintiffs evidence as true and accorded the plaintiff all legitimate inferences which could be deduced from the evidence. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 666 A.2d 146 (1995). In so doing, I was cognizant of the presumption of validity which attaches to tax assessments and which is described in Pantasote Co. v. City of Passaic, 100 N.J. 408, 495 A.2d 1308 (1985), and discussed further (and somewhat differently) in Ford Motor Co. v. Edison Tp., 127 N.J. 290, 312-13, 604 A.2d 580 (1992). In order to overcome the presumption, the plaintiff must present evidence which, when viewed under the foregoing evidentiary standard, is sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment. Riverview Gardens, Section One, Inc. v. North Arlington Bor., 9 N.J. 167, 175, 87 A.2d 425 (1952); Rumson Bor. v. Peckham, 7 N.J.Tax 539, 548 nn. 1-2, 550 (Tax 1985); MSGW Real Estate Fund, LLC v. Mountain Lakes Bor., 18 N.J.Tax 364, 374-77 (Tax 1999).
Plaintiffs proofs consisted of the testimony and appraisal report of an appraiser whose extensive qualifications as an expert witness were stipulated. The appraiser had long experience in valuing property in Hudson County and had testified many times as an appraisal expert in the Tax Court. He relied almost exclusively on the income approach and, in so doing, relied on the rent for the subject property which he testified was supported by other rents for similar properties in the general vicinity. The appraiser’s *409 testimony and appraisal report, if accepted as true, demonstrated a value for the subject property of $4,500,000 as of each of the valuation dates in question, namely October 1, 1994 and October 1, 1995.
This testimony by plaintiffs appraiser, together with his appraisal report, when viewed under the evidentiary standard applicable to R. 4:37-2(b) motions, provided a sufficient basis to determine the value of the subject property, thus raising a debatable question as to the correctness of the assessment. Consequently, plaintiffs proofs were sufficient to withstand the defendant’s motion to dismiss.
B and C. Selection of Comparable Sales and Use of the Sales to Temper the Income Approach to Value.
In the portion of my bench opinion where I “tempered” my income approach valuation by consideration of the sales comparison approach, I mentioned three of the five sales used by plaintiffs appraiser. I noted that, as adjusted by plaintiffs appraiser, [1] two of these three sales (both in Jersey City) reflected an average price of $29.60 per square foot of building, or a value of $5,108,072 for the subject property which contains a 172,570 square foot building, and the third sale (in Bayonne) reflected a price of $28.42 per square foot or a value for the subject property of $4,904,439 ($28.42 x 172,570 sq. ft.). The average price reflected by the three sales was $29.21 per square foot of building, or a value of $5,040,770 for the subject property. My purpose in referring to these specific sales was to indicate that uwee of the sales included in the analysis of plaintiffs appraiser, even as adjusted by him, would demonstrate a value for the subject property in excess of the $4,500,000 value set forth in his appraisal report and in excess of the value which I determined under the income approach.
*410 The discussion of these three sales was only a portion of my' analysis of the sales comparison approach. Earlier in my opinion, I considered all of the sales used by both appraisers. Plaintiffs appraiser used the sales comparison approach only as a cheek on his primary approach which was the income approach. Defendant’s appraiser gave substantial significance to the sales comparison approach in his value conclusion. In my analysis, I noted that two of the five sales used by plaintiffs appraiser were adjusted by 45% and 65%, respectively, which indicated a lack of comparability. The other sales were of buildings either larger or smaller than the subject building, but the appraiser made adjustments for the size differences as well as other factors. After adjustment, these sales reflected per square foot prices of $29.75, $29.46 and $28.42.
The six comparable sales considered by defendant’s appraiser included three properties in Jersey City, one in Bayonne, and two in Secaucus. I noted in my bench opinion that one sale in Jersey City and one sale in Secaucus involved fully air-conditioned buildings which were not comparable to the subject property. One of the other Jersey City sales and the Bayonne sale were also used by plaintiffs appraiser. Plaintiffs appraiser adjusted this Jersey City sale to reflect $29.75 per square foot, and defendant’s appraiser adjusted the sale to reflect $40.25 per square foot. In analyzing the sale, I expressed concern as to the impact on the purchase price of the existing lease for the premises.[2] Plaintiffs appraiser adjusted the Bayonne sale to reflect $28.42 per square foot, and defendant’s appraiser adjusted the sale to reflect $84.74 per square foot.
*411 Defendant’s appraiser determined a value for the subject property, based on the sales comparison approach, of $38 per square foot of building area. In discussing his analysis, I expressed concerns that the appraiser had only limited knowledge as to the financing on each sale, and that he adjusted each sale upward to reflect excess land.[3] Because I concluded that the subject property contained no excess land, I rejected that adjustment. Without adjustment for excess land, the four sales without air-conditioning which defendant’s appraiser used, as otherwise adjusted by him, reflected respective per square foot prices of $35 (the Jersey City sale common to both appi'aisals), $28.42 (the Bayonne sale common to both appraisals), $34.50 and $42.04. As set forth in his appraisal report, the appraiser’s adjustment for excess land increased his value by approximately $5 per square foot of building area. Without the excess land adjustment, therefore, defendant’s appraiser presumably would have determined a value of $33 per square foot of building area or $5,694,800 ($33 x 172,570 sq. ft..). This value would be supported by the four comparable sales discussed above.
In analyzing all of the sales considered by the two appraisers, I took into account concerns relating to the financing of the sales, the impact on one of the sales prices of an existing lease, and the size disparities between the subject building, and the sales comparables. I also took into account that the two appraisers used the sales comparison approach differently in their respective valuation analyses, and that both appraisers adjusted the sales for size and other differences from the subject property. In addition, I took into account the selection by both appraisers of two of the same sales as comparables, and the fact that the per square foot prices reflected by these two sales as adjusted by plaintiffs appraiser and as adjusted by defendant’s appraiser (even without his upward adjustment for excess land) would demonstrate a value for the *412 subject property ranging from $120,589 to $1,256,100 in excess of the income approach value which I determined.
When a court has available two valuation approaches which indicate different values, the court must reconcile the approaches. The process of reconciliation is described in MSGW Real Estate Fund LLC v. Mountain Lakes, supra, 18 N.J.Tax at 402. That description includes the following quotation from The Appraisal of Real Estate, supra, a text consistently accepted as authoritative on valuation analysis:
An appraiser relies more on professional experience, expertise, and judgment in reconciliation than in any other part of the valuation process. In reconciliation an appraiser considers and evaluates varying value indications to arrive at a final value estimate. The appraiser weighs the relative significance, applicability, and defensibility of each value indication and relies most heavily on the approach that is most appropriate to the nature of the appraisal.
[The Appraisal of Real Estate, supra at 603.]
This description of reconciliation is as applicable to the court as it is to appraisers. The process of weighing different value indications is more subjective than objective, and depends in large part on the expertise and judgment of the appraiser, and thus of the court. Although specific weighting for the different approaches could be articulated, in fact, the weights would be assigned after the court exercises its judgment and expertise in determining value, Backing into specific weighting factors accomplishes little, if anything. In any event, the precision suggested by mathematically precise factors would be illusory because the factors would themselves be determined by the exercise of judgment and expertise.
In the subject appeals, I attributed “limited weight” to the sales comparison approach in reconciling the income and sales comparison approaches. In doing so, I recognized the flaws in the sales comparison approach of both appraisers, but concluded that, notwithstanding its flaws, the approach, particularly as used by defendant’s appraiser, merited consideration in reaching my final value determination. My final value conclusion was $4,950,000. My income approach value was $4,783,850. Accordingly, the inclusion of the sales comparison approach in my analysis resulted *413 in an increase of $166,150 to my income approach value. Although this increase calculates to an adjustment of approximately 3.5%, I did not determine the adjustment by first selecting such percentage, nor did I perform a specific weighting analysis.[4] Calculation of such adjustment was based upon my best judgment after viewing the evidence, much like a determination of credibility after observing and listening to a witness. See First Republic Corp. of Am. v. East Newark Bor., 17 N.J.Tax 531, 536-37 (App.Div.1998), certif. denied, 157 N.J. 647, 725 A.2d 1128 (1999) (describing the Tax Court’s determination of the components of an income approach to value as involving expertise and credibility judgments).
Based on the preceding discussion, I believe that, in my initial opinion, I properly applied the process of reconciliation. Both appraisers considered the sales comparison approach. I regarded the approach as a far less reliable indicator of value than the income approach, but nevertheless worthy of some consideration. After re-examining my analysis in light of the comments by the Appellate Division, I conclude that the “tempering” of my income approach value was appropriate and supported by the evidence.
D. Use of Unadjusted Lease Comparables.
In my valuation analysis, I considered all leases used by both appraisers. As noted in my bench opinion, the plaintiffs appraiser considered five comparable leases only to demonstrate that the rent under the lease for the subject premises was within the range demonstrated by the market. He made no adjustments to these comparables. Defendant’s appraiser, however, relied upon comparable leases, which he analyzed and adjusted, as the basis for his determination of economic rent.
*414 The five comparable leases considered by defendant’s appraiser were all located in Jersey City. The appraiser made a positive 15% adjustment to the rental amounts to reflect the excess land which he detei'mined existed at the subject property. As set forth in my bench opinion, I rejected the assertion that the subject property contained excess land. After excluding this adjustment, the comparable leases used by defendant’s appraiser reflected per square foot net rents of $3.43, $3.56, $3.80, $3.08, and $3.60, or an average of $3.49 per square foot., The subject lease, upon which plaintiffs appraiser relied, indicated a per square foot net rent of $3.30. In his selection.of comparable leases, plaintiffs appraiser also included one of the leases upon which defendant’s appraiser relied. This lease reflected an unadjusted rent of $3.43 per square foot and, as adjusted by defendant’s appraiser (but eliminating his adjustment for excess land), the lease reflected the same rent of $3.43 per square foot.
I gave no consideration to the two rents outside of Jersey City used by plaintiffs appraiser. When the three unadjusted rents in Jersey City used by the appraiser are combined with the five adjusted comparable rents used by defendant’s appraiser (excluding his adjustment for excess land), the result is an overall average rent of $3.41 per square foot. As set forth in the preceding paragraph, the five comparables used by defendant’s appraiser reflected an average rent of $3.49 per square foot. The one lease common to both appraisals reflected $3.43 per square foot before and 'after adjustment (by defendant’s appraiser). The subject lease upon which plaintiffs appraiser relied indicated a rent of $3.30 per square foot. In reaching my conclusion as to economic rent, I recognized that plaintiffs appraiser did not make any adjustments to his comparable rents, and my inclusion of those rents in my discussion did not affect my determination that the economic, or fair market, rent for the subject property as of the applicable valuation dates was $3.45 per square foot.
The Appraisal of Real Estate supra, states:
Reconciliation requires appraisal judgment and a careful, logical analysis of the procedures that lead to each value indication. Appropriateness, accuracy, and *415 quantity of evidence are the criteria with which an appraiser forms a meaningful, defensible final value estimate. These criteria are used to analyze mdtiple value indications within each approach and to reconcile the indications produced by the different approaches into a final estimate of defined value.
[The Appraisal of Real Estate, supra at 603 (emphasis supplied).]
As the foregoing analysis demonstrates, my reconciled economic rent is $.04 per square foot higher than the average of all eight comparables, including the three unadjusted comparables considered by plaintiffs appraiser, $.04 per square foot lower than the average of the five comparables used by defendant’s appraiser as adjusted by him (but excluding his adjustment for excess land), $.02 per square foot higher than the rent indicated by the one lease common to both appraisals, and $.15 per square foot higher than the rent under the lease for the subject premises. As my bench opinion indicated, I did not accept the subject lease rent of $8.30 per square foot because of concerns that it may have been affected by a continuing business relationship and transaction between the landlord and the tenant/occupant of the space. I attributed greater weight to the lease comparables considered by defendant’s appraiser. My conclusion as to economic rent was based on my analysis of the evidence and exercise of my judgment. For the reasons discussed above with respect to the sales comparison approach, mathematical precision is not possible in reconciling the different rents indicated by a number of lease comparables, nor would any purported precision illuminate the process.
Based on the preceding discussion, I conclude that no change is necessary in my income approach valuation analysis for the subject property. That analysis demonstrated a fair market value of $4,783,850. After giving consideration to the sales comparison approach value discussed above of $5,694,800, and reconciling, the two approaches, I conclude that my determination of $4,950,000 as the fair market value of the subject property, as of each of October 1, 1994 and October 1, 1995, should not be changed. New Judgments will be issued based on such conclusion, containing the same allocation of assessments between land and improvements as set forth in the original Judgment.
*416 As noted above, in its remand Opinion the Appellate Division expressed concern that the market value I determined was three-tenths of one percent less than the assessment for each of the years under appeal. Although the Appellate Division did not require any additional comment on this issue, I will address the court’s concern. Assessed values are not market values. Assessed values are market values adjusted by the applicable Chapter 123 ratios, here 89.43% for 1995 and 92.69% for 1996. See N.J.S.A 54:51A-6 and N.J.S.A. 54:1-35a to -35b. A property in Jersey City having a market value of $100,000 should, therefore, be assessed in 1995 for $89,400 and in 1996 for $92,700 (assessments are rounded to the nearest $100). Accordingly, the assessment on the subject property of $4,965,700 reflected a market value of $5,552,600 ($4,965,700 -a- 89.43%) for 1995 and $5,357,300 ($4,965,700 -a- 92.69%) for 1996. My value determination of $4,950,000 was lower than the market values reflected by the assessments by 10.85% and 7.6%, respectively. The percentage relationship between the assessment and my determination of market value is not meaningful because it reflects a comparison of numbers having different purposes and functions, which were determined on different bases.

 In my bench opinion, I inadvertently referred to delendant's appraiser when I intended to refer to plaintiff’s appraiser. This was corrected by a letter to the Appellate Division dated March 17, 1998.

 In the marketplace, the purchase price for income-producing properties is influenced by the terms of existing leases. Consequently, the purchase price for a property which is subject to a lease at below-market, or above-market, rent may not reflect fair market value for tax assessment purposes. See City of New Brunswick v. State of N.J. Div. of Tax Appeals, 39 N.J. 537, 543-44, 189 A.2d 702 (1963) (noting that tax assessment valuation requires the use of fair market rent rather than actual lease rent).

 Excess land, as discussed in my bench opinion, is land “not needed to serve or support the existing improvement'' and which can be used foi expansion of the existing improvement or independent development. Appraisal Institute, The Appraised of Reed Estate 230 (11th ed. 1996).

 The following weighting analysis, which I consider reasonable, supports, but was not the basis for, my adjustment. If I assume a sales comparison approach value of $33 per square foot or $5,694,810 in accordance with the analysis of defendant's appraiser as discussed above, give that value a 15% to 20% weight, and give the income approach value an 85% to 80% weight, I reach approximately $4,950,000.