NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1303-19T1

CITY OF NEWARK,

     Plaintiff-Appellant,

v.

TOWNSHIP OF JEFFERSON,

     Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

January 29, 2021

APPELLATE DIVISION

Submitted January 12, 2021 — Decided  January 29, 2021

Before Judges Haas, Mawla, and Natali.

On appeal from the Tax Court of New Jersey, Docket Nos. 13604-2009 and 13606-2009, whose opinion is reported at 31 N.J. Tax 303 (Tax 2019).

Blau & Blau, attorneys for appellant (Robert D. Blau, on the briefs).

Lavery, Selvaggi, Abromitis & Cohen, attorneys for respondent (Lawrence P. Cohen, of counsel and on the brief; William H. Pandos, on the brief).

The opinion of the court is delivered by

MAWLA, J.A.D.

Plaintiff City of Newark appeals from an October 18, 2019 judgment affirming tax assessments on approximately 4036 acres of watershed land

situated in defendant Township of Jefferson. We reverse and remand for further proceedings consistent with this opinion.

The facts of this case were explained in detail in the Tax Court's decision, which followed a seven-day trial. City of Newark v. Twp. of Jefferson, 31 N.J. Tax 303, 311-18 (Tax 2019). To summarize, this dispute centers on defendant's assessment of plaintiff's property for tax years 2009 through 2016. Id. at 310-11. The property is approximately ninety to ninety-five percent wooded, contains 400 acres of open water, and is comprised of "steep slopes, rock outcroppings and floodplain areas." Id. at 311. The property is also restricted by the Watershed Moratorium Act, N.J.S.A. 48:3-7 and N.J.S.A. 48:2-23.1, and the New Jersey Highlands Protection Act, N.J.S.A. 13:20-1. Ibid. "[C]onservation easements [conveyed in 2002 and 2004] . . . granted under two deeds by . . . [plaintiff] to the Department of Environmental Protection" intend to "assure the . . . [p]roperty will be retained forever and predominantly in its natural forested condition and to prevent any use of the . . . [p]roperty that will impair or interfere with the [c]onservation [v]alues of the . . . [p]roperty . . . ." Id. at 311-12. The deeds prohibit "subdivision and development[;] mining[;] . . . construction of new roads[;] . . . dumping or placing of trash or waste[;] . . . activities that would be detrimental to drainage, flood control, water conservation, erosion control or soil

conservation[;] and the clear cutting of timber stands . . . ."  Id. at 312. However, the deeds permit "selective cutting of timber so long as it is done for certain enumerated purposes under the supervision of a New Jersey State Forester with prior approval by [plaintiff] . . . and in accordance with an approved Forest Management Plan."  Ibid.

Following the 2008 recession, defendant reassessed all real property in tax year 2010 and decreased the assessment for all other property owners within the Township.  Ibid.  However, aside from three lots belonging to plaintiff, which remained at the 2009 assessment level of $3500 per acre, plaintiff's property "was assessed at $5000 per acre for tax years 2010 through 2012; and at $4000 per acre for tax years 2013 through 2016."  31 N.J. Tax at 312-13.

Plaintiff challenged the assessments and presented testimony from the director of the Newark Watershed Corporation, a certified forester, the tax assessor, and expert testimony from a licensed real estate appraiser.  Id. at 313. Plaintiff's appraiser opined the land's highest and best use "was for the purpose of harvesting the property for wood and reselling it to loggers, sawmills, timber buyers, and the like."  Id. at 319.  The expert concluded the value of plaintiff's property was $1500 per acre.  Id. at 315.

Plaintiff also called the assessor and questioned him at length regarding settlement discussions the assessor asserted occurred between him and plaintiff's counsel to arrive at the $5000 per acre assessment. We need not repeat the lengthy colloquy here, but it clearly demonstrates the assessment was based on settlement discussions. The assessor also testified he based the reassessment on his prior knowledge of another land transaction between a private owner and the State. He categorized the other transaction as a "15," meaning it

> should generally be excluded [as a non-usable sale in calculating the market value of another land], but may be used if after full investigation it clearly appears that the transaction was [an arm's length transaction] . . . and that the transaction meets all the other requisites of a useable sale. . . . [Assessors] have a choice [regarding] . . . a number [fifteen] . . . non-useable sale because [it is] a state sale, you can either call it unusable or you can determine if [it is] a fair market sale. . . . And then [if the assessor determines it is a fair market sale,] it becomes a useable sale.

However, the assessor conceded he made no "attempt to find out if this otherwise non-usable sale was actually a fair market sale." He explained the other property "had been on the market for a long period of time, [and] that [he knew it was] physically constrained, [and] very similar to [plaintiff's] property . . . ." He testified because "[i]t was a government sale[, h]e threw it out for . . . ratio purposes . . . ." Then, he "took that same sale[, which] was . . . not

4

part of the reassessment program . . . [along with the conversation with plaintiff's counsel as] the only [other] source of information . . . [to] reassess[] the Newark property and increas[e] the assessment by $6 million . . . ."

Following the close of plaintiff's case, defendant moved to dismiss plaintiff's complaints for failure to overcome the presumption in favor of the correctness of the assessments. The trial judge denied defendant's motion "finding . . . the testimony and report of [plaintiff's] expert appraiser, if taken as true, raises a debatable question as to the correctness of the assessments in each tax year in issue." Id. at 317.

Thereafter, defendant presented expert testimony from a licensed real estate appraiser. Id. at 313. Defendant's expert testified the highest and best use for plaintiff's property was for active and passive recreation and using the same sales comparison approach as plaintiff's expert opined "the most probable buyer is a land preservation group or governmental agency." Id. at 325. The expert valued plaintiff's land between $4500 and $6500 per acre, which the judge noted would result in "a reduction in the assessments for the parcels of [plaintiff's p]roperty under appeal for the 2009 tax year, sustaining the assessments . . . for tax years 2010, 2011, 2012, and 2013, and increasing the assessments . . . for tax years 2014, 2015 and 2016." Id. at 314-15.

The judge concluded plaintiff failed to maintain its burden of proof to modify the assessments and rejected the testimony of both appraisal experts. Id. at 327.  The judge rejected plaintiff's expert's opinion because the appraiser conceded "there were no sales of land in the State of New Jersey for the purposes of timbering, [therefore the expert] should have eliminated the timbering as a potential highest and best use for the [p]roperty . . . ."  Id. at 321.  As a result, the trial judge concluded the sales comparisons considered by plaintiff's expert, which included twenty properties that were subject to a farmland assessment, were in fact not comparable properties because none produced timber and therefore did not have the same highest and best use.  Id. at 322.  The judge further determined only three of the twenty properties were located in Northern New Jersey, which the expert failed to consider in his valuation.  Id. at 323.  The judge also noted the expert failed to verify the sales.  Id. at 324.

The judge rejected defendant's expert's opinion and found "the presence of a permanent conservation easement [on plaintiff's property] has greater impact than various restrictions that exist on the comparable properties."  Id. at 326.  The judge differentiated the sixteen comparable properties analyzed by defendant's expert, which had "limited development potential" from plaintiff's property, which could not be developed.  Id. at 327.

A-1303-19T1

The judge found neither expert opinion credible and stated: "While [plaintiff] may have overcome the presumption of the correctness of the assessments, it failed to persuade the court to accept its proofs." Ibid. The judge concluded as follows:

> "When the court rejects the ultimate conclusions as to true value proffered by the parties' experts, it should make an independent determination of true value on the basis of those portions of the experts' testimony which the court finds credible." Pennwalt Corp. v. Twp. of Holmdel, 4 N.J. Tax 51, 55-56 (Tax 1982) (emphasis added). For the reasons set forth above, there is insufficient credible evidence for the court to make an independent determination of true value. Consequently the assessments are affirmed.
>
> [Id. at 327-28.]

Plaintiff raises the following points on appeal:

> Point One[:] The Court Erred by Applying the Presumption of Correctness to the 2010 Assessments.
>
> Point Two[:] There was Sufficient[,] Credible[,] Cogent Evidence to Establish that the Subject Property Had, At Most, Nominal Value.
>
> A. The Tax Court Failed to Recognize the Impact of the Sale of [Plaintiff's] Development Rights on the Value of the Subject Property.
>
> B. The Tax Court Failed to Recognize that the Watershed Moratorium Act Reduced the Value of the Subject Property to Near Zero.
>
> C. The Subject Property Does Not Have a Highest and Best Use.

Point Three[:]   This Court Must Reverse the Tax Court's Opinion Because It Sets a Bad Precedent.

Point Four[:]   Because the Subject Property Has Only Nominal Value, the [Presumption] that Attaches to the $20,000,000 Assessment Has Been Overcome.

"Judgments of a trial judge sitting without a jury 'are considered binding on appeal when supported by adequate, substantial and credible evidence.'" Glob. Terminal & Container Servs. v. Jersey City, 15 N.J. Tax 698, 702 (App. Div. 1996) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)).  "This is especially so with respect to the findings of the Tax Court because of the special expertise afforded to such courts."  Id. at 703 (citing Kearny Leasing Corp. v. Town of Kearny, 7 N.J. Tax 665, 667 (App. Div. 1985)).  Therefore, we "will not disturb [the Tax Court's] finding unless they are plainly arbitrary or there is a lack of substantial evidence to support them."  Pine St. Mgmt. Corp. v. City of E. Orange, 15 N.J. Tax 681, 686 (App. Div. 1995) (alterations in original) (quoting G. & S. Co. v. Borough of Eatontown, 6 N.J. Tax 218, 220 (Tax 1982)).

The "court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  We apply a de novo review to a trial judge's legal conclusions.  Ibid.

I.

"Original assessments . . . are entitled to a presumption of validity."

MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax

364, 373 (Tax 1998). Our Supreme Court has stated:

> The presumption attaches to the quantum of the tax
> assessment. Based on this presumption the appealing
> taxpayer has the burden of proving that the assessment
> is erroneous. The presumption in favor of the taxing
> authority can be rebutted only by cogent evidence, a
> proposition that has long been settled. The strength of
> the presumption is exemplified by the nature of the
> evidence that is required to overcome it. That
> evidence must be "definite, positive and certain in
> quality and quantity to overcome the presumption."
>
> [Ibid. (quoting Pantasote Co. v. City of Passaic, 100
> N.J. 408, 413 (1985) (citations omitted)).]

Evidence that overcomes the presumption "must be 'sufficient to

determine the value of the property under appeal, thereby establishing the

existence of a debatable question as to the correctness of the assessment.'" W.

Colonial Enters, LLC v. City of E. Orange, 20 N.J. Tax 576, 579 (Tax 2003)

(quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax

1999)). If such evidence is produced, the trial court must "appraise the

testimony, make a determination of true value and fix the assessment."

Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App.

Div. 1982). Our Supreme Court stated:

9

In Glen Wall Associates v. Township of Wall, 99 N.J. 265 (1985), we emphasized that the Tax Court has an obligation to use its "'special qualification[s], knowledge and experience'" in reaching a determination of value. Id. at 280 (quoting N.J.S.A. 2A:3A-13). The premise of Glen Wall is that because of the Tax Court's special expertise in these matters, it "'has not only the right[] but the duty to apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question.'" Id. at 280 (quoting New Cumberland Corp. v. Borough of Roselle, 3 N.J. Tax 345, 353 (Tax 1981)).

[Ford Motor Co. v. Twp. of Edison, 127 N.J. 290, 311-12 (1992).]

A.

At the outset, we reject plaintiff's argument under Points Two and Four asserting the trial judge erred because the property had nominal value. Plaintiff argues the judge failed to recognize the sale of the development rights to the State as a part of the land conservation and the moratorium on development by virtue of the land's status as a watershed, which rendered its value nominal. However, the record does not support plaintiff's argument because even plaintiff's expert asserted the property's assessed value should be based on $1500 per acre.

B.

In Point One, plaintiff argues the trial judge erred by applying the presumption of correctness to the assessments because: the assessor

10

discriminated against plaintiff by reducing the assessments Township-wide, but increasing it on plaintiff's property, which constituted a spot assessment that violated the rule of assessment uniformity; the assessor's valuation methodology was improper because he based it on a conversation he had with plaintiff's counsel whereby he claimed they mutually agreed to assess the land at $5000 per acre, yet the assessor testified he could not recall the details of the conversation and kept no notes, and plaintiff denied they reached an agreement; and the assessment was based on a comparable sale of developed land that was not subject to the same restrictions as plaintiff's property.

We reject the argument the trial judge should have found defendant's actions were discriminatory. The record is clear the assessment was primarily based on the assessor's settlement negotiations with plaintiff's counsel, which the assessor believed resulted in an assessment of $5000 per acre. This does not indicate discriminatory treatment by defendant.

Notwithstanding our conclusion there was no discriminatory treatment in the assessments, we are constrained to reverse and remand the matter for reconsideration because the assessment had no basis in the facts. In Transcontinental Gas Pipe Line Corporation v. Bernards Township, our Supreme Court reversed the municipal tax assessments of segments of a gas pipeline subject to federal regulation. 111 N.J. 507, 514 (1988). As is the case

11

here, the nature of the property in Transcontinental was subject to unique restrictions affecting its valuation. Id. at 519. The Court concluded the taxpayers' valuation methodology and the tax assessment methodology were flawed. Id. at 513-14. Regarding the latter, the Court noted

> the assessor simply calculated the value of the property necessary to produce approximately the same tax dollars at the Township's new tax rate as it had the previous year under its old tax rate . . . [and] made no attempt to determine the rate at which taxpayers' property appreciated in relation to the increase in value of other kinds of property in the Township. Without evidence that all kinds of property in the Township, whether it be residential, commercial or industrial, appreciated at the same rate, and that pipeline property was comparable to these other types of property, such an assumption was improper.
>
> [Id. at 538-39.]

Citing Pantasote, the Court held

> the presumption [of the assessment's validity] remain[s] in place even if the municipality utilized a flawed valuation methodology, so long as the quantum of the assessment is not so far removed from the true value of the property or the method of assessment itself is so patently defective as to justify removal of the presumption of validity.
>
> [Id. at 517 (second emphasis added).]

The Court concluded

> the methodology utilized in the original assessment manifested an arbitrary or capricious discharge of the assessor's responsibilities. We determine that, when

12

confronted by such a totally deficient valuation methodology, which provides no reliable indication that the quantum of the assessment is itself reasonable, the Tax Court is obligated to exercise its power to make an independent assessment based on the evidence before it and data properly at its disposal.

[Id. at 538.]

Here, the assessment was defective and not entitled to the presumption of validity because it was primarily based on a settlement discussion rather than the value of the property. The assessment was also problematic because the assessor relied on another sale he failed to verify. The trial judge made no findings regarding the validity of the assessment methodology and the record does not support its validity. For these reasons, we reverse and remand the matter for reconsideration and further findings by the trial judge on this issue and direct the judge to make an independent finding of the value of the property for tax purposes. Plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION