TAX COURT OF NEW JERSEY



**MARY SIOBHAN BRENNAN**
**JUDGE**

495 Martin Luther King Blvd., Fourth Floor
Newark, New Jersey 07102
609 815-2922, Ext. 54560
Fax: 609 815-3079

## NOT FOR PUBLICATION WITHOUT THE APPROVAL
## OF THE TAX COURT COMMITTEE ON OPINIONS

September 19, 2025

William Maslo, Attorney at Law
City of Jersey City Law Department
364 MLK Drive
3rd Floor
Jersey City, NJ 07305

Wright JC Suites LLC
67 West Street
Ste 401-C6
Brooklyn, New York 11222

      Re:    <u>City of Jersey City v. Wright JC Suites LLC</u>
               Docket No.: 010126-2023

Dear Mr. Maslo and Representative of Wright JC Suites LLC:

This constitutes the court's opinion determining the market value of real property when there is an absent taxpayer in a reverse/increase tax appeal. For the reasons set forth below, the court finds that when a party in a tax appeal fails to defend the complaint or counterclaim, or when a business entity fails to retain counsel pursuant to <u>R.</u> 8:3-3; <u>R.</u> 1:21-1(c), the court shall proceed to resolve the appeal through the issuance of default judgment employing the lower burden of proof as established in <u>Heimbach v. Mueller</u>, 229 N.J. Super 17 (App. Div. 1988).






Applying this lower burden of proof to the evidence produced, the court finds in favor of plaintiff, City of Jersey City ("Municipality"), increasing the 2023 tax assessment of Wright JC Suites LLC ("Defendant").

## I. Findings of Fact and Procedural History

This tax appeal relates to land and improvements identified on the Jersey City tax map as Block 10302, Lot 3, with a street address of 12 Wright Avenue ("Subject Property"). Defendant purchased the Subject Property on April 26, 2017, for $210,000. For the 2023 tax year, the Subject Property had an assessment of $342,600. Applying the 2023 Chapter 123 average ratio (82.91%)[1] results in an implied market value of $413,219.

The Subject Property consists of a 1,999 square foot lot improved by a two-story, two-family residential dwelling. The improvement, built in 1920, was

---

[1] After a revaluation, all assessments in a municipality must be set at 100% of true market value measured as of October 1st of the pre-tax year. The State Division of Taxation (the "Division") determines an equalization ratio (also known as the "average ratio") for any municipality that has a deviation in assessments from 100% of true market value. The equalization ratio represents the average relationship in any given year between the assessed values and the true market values of properties within the municipality, which is based upon the Division's annual analysis of relevant sales data. It is commonly referred to as "Chapter 123," based upon the enactment of Chapter 123 of P.L. 1973. The goal of Chapter 123 is to verify the fairness of tax assessments in New Jersey – specifically, to confirm that the relationship between the total assessment and the true market value of a property, as viewed as a ratio or percentage, is within an acceptable range (known as the "common level range") for the municipality. If it is not, then the current assessment is viewed as either too high or too low.

renovated in 2018, and the Subject Property is in a neighborhood zoned for residential housing (R-1). The lot is generally level, rectangular in shape, and has approximately twenty (20) feet of frontage along Wright Avenue.

There are two separate apartments, one on each floor. Each apartment has three (3) bedrooms, one (1) full bathroom, kitchen, dining room, and living room. The improvement also houses a partially finished basement. The Gross Living Area is 1,940 square feet. The improvement is described as being in "Good" condition with a brick exterior wall and a flat roof. Inside, the walls are primarily sheetrock, and flooring is primarily hardwood and ceramic tile.

Pursuant to N.J.S.A. 54:3-21(a)(1), taxing districts which may feel discriminated[2] against by an assessed valuation of property in the taxing district may, on or before April 1, file a complaint with the county board of taxation.[3] N.J.S.A.

---

[2] In the context of property tax appeals, "discrimination" refers to the situation where a property's assessed value is considered unfair when compared to other similar properties in the same municipality. It essentially means that the assessed-to-market value ratio applied to a specific property is beyond the legally permitted range. This standard recognizes that property values fluctuate over time due to various factors like inflation or depreciation after a revaluation or reassessment. Therefore, the common level range is a permissible range within which assessed values can deviate from the true market value. In New Jersey the common level range for a taxing district is generally plus or minus 15% of the average ratio for that district. Chapter 123 establishes the annual ratios.

[3] Or directly with the Tax Court if the assessed valuation of the property subject to appeal exceeds $1,000,000.

54:51A-9 allows parties dissatisfied with the judgment of the Board to seek review of the judgment in Tax Court according to the procedures and time limits determined by the Director of the Division of Taxation, which is forty-five (45) days.

Municipality filed a Verified Petition of Appeal with the Hudson County Board of Taxation ("Board") alleging that the Subject Property was underassessed for tax year 2023. Neither Defendant nor an attorney on Defendant's behalf appeared at the County Board hearing. On August 3, 2023, the Board issued a Memorandum of Judgment with Judgment Code #6B "Hearing Waived" affirming the $342,600 assessment. On August 28, 2023, the Board mailed a copy of the Memorandum of Judgment to the Municipality, and a copy to Defendant at its address of 67 West Street Ste 410-C6 Brooklyn, New York 11222.

Part VIII of the New Jersey Rules of Court govern the practice and procedure in all actions in the Tax Court. R. 8:1. The Tax Court has initial review jurisdiction of all final decisions of a county board of taxation. R. 8:2.

On October 11, 2023, Municipality timely filed a complaint with the Tax Court, appealing the Board's judgment and naming WRIGHT JC SUITES, LLC, the owner of record, as defendant. The complaint alleges discrimination, asserting that the 2023 assessment is below its true market value.

R. 8:5-3(a)(2) provides that a complaint by a taxing district to review the action of a County Board of Taxation shall be served on the County Board of

4

Taxation and, if the action to be reviewed involves the assessment of a specific parcel of property, on the taxpayer of said property and the assessor of the taxing district. Furthermore, R. 8:5-4(3) states:

> Service upon a taxpayer in a local property tax matter shall be: (i) By personal service or by certified or registered mail, return receipt requested, upon the attorney who appeared for the taxpayer in the County Board of Taxation proceeding which resulted in the judgment contested in the complaint. *(ii) If there was no attorney for the taxpayer in the County Board of Taxation proceeding which resulted in the judgment contested in the complaint or if the complaint is a direct appeal by a taxing district pursuant to N.J.S.A. 54:3-21, service shall be made upon the taxpayer by personal service or by certified or registered mail, return receipt requested, and if by mail, at the address listed on the County Board of Taxation petition by the taxpayer, or if none,* **at the last known address as it appears on the last taxing district tax duplicate**. (iii) Consistent with due process of law, service by mail pursuant to this subsection shall have the same effect as personal service, and the mailing shall constitute effective service unless the mail is returned undelivered by the Postal Service. (iv) When service by certified or registered mail, return receipt requested, is not effected initially because the mail is returned undelivered, the party making service may make reservice simultaneously by certified or registered mail, return receipt requested, and ordinary mail, and if the addressee refuses to claim or accept delivery of the certified or registered mail and if the ordinary mail is not returned, the simultaneous mailing shall constitute effective service, and the additional time required for service shall not affect the validity of the complaint. (v) If service cannot be made by any of the modes provided by this rule, a taxpayer may be served as provided by court order, consistent with due process of law.

[R. 8:5-4(3). Emphasis added.]

New Jersey's Rules of General Application are also implicated. R. 1:5-2 states that service upon a party shall be made as provided in R. 4:4-4 or by registered or certified mail, return receipt requested, and simultaneously by ordinary mail to the party's last known address. Precedent holds that service on a party by simultaneous certified and regular mail, constitutes good service even if the party refuses to claim the certified mail. See EMC Mortg. v. Chaudhri, 400 N.J. Super. 126, 140 (App. Div. 2008) (stating "the [Plaintiff's] failure to claim the certified mail . . . will not defeat [ ] compliance").[4]

In New Jersey, real property is assessed to its owner.[5] While it is well established that one need not be the owner of real property to be an aggrieved taxpayer entitled to initiate a tax appeal, this court has determined that by virtue of holding title to the property, the owner maintains independent standing as an aggrieved taxpayer even in situations where other aggrieved taxpayers exist. See B&D Assoc., Ltd. v. Twp. Of Franklin, 32 NJ Tax 81, 88-89 (Tax 2020). Thus, it

---

[4] See Current N.J. Court Rules, cmt. on R. 1:5-2 (2025).

[5] N.J.S.A. 54:4-23 provides, "[a]ll real property shall be assessed to the person owning the same on October 1 in each year."

stands to reason that, in the absence of any other known aggrieved taxpayers, Defendant, as the record owner, is the appropriate party in this appeal.[6]

On October 11, 2023, Municipality served the complaint on Defendant via certified and ordinary mail at the address of record on the tax roll,[7] pursuant to R. 8:5-4. On December 10, 2023, the United States Postal Service (USPS) returned the certified mail return receipt card (green card) marked "Refused." USPS did not return the complaint sent by regular mail. The Board, the Jersey City assessor, and the Jersey City Clerk were also served.

Review of Jersey City's online Tax Inquiry and Payment website at "taxes.cityofjerseycity.com/Viewpay?accountNumber=253153" discloses that on December 15, 2023, Municipality issued Tax Sale Certificate 2023-0555 to Lien Holder Trystone Capital Assets LLC ("Trystone") in the amount of $1,826.51 for the first quarter of 2023, and $2,742.26 comprising the second quarter payment real estate taxes as well as solid waste, water and sewer payments for 2023. For this reason, the court is considering Trystone to be an interested party in this decision.

Defendant designates itself as a limited liability corporation. The New Jersey Court Rules provide that an entity other than a sole proprietorship, however formed

---

[6] While the Subject Property is a two-family dwelling, leases are absent.

[7] Municipality's counsel also confirmed Defendant's address by a search of the Subject Property's Deed dated April 26, 2017, which stated Defendant's address as "67 West Street, Suite 401-C6, Brooklyn, NY 11222."

7

and for whatever purpose, shall neither appear nor file any paper in any action in the Tax Court except through an attorney authorized to practice in New Jersey.  R. 8:3-3; R. 1:21-1(c).[8]

For this reason, on October 24, 2023, the Tax Court Management Office issued the following notice to the Defendant:

> An attorney must file a notice of appearance on the defendant entity's behalf within 30 days of the date of this notice, if you wish to oppose the relief sought in the above-captioned local property tax complaint.  If you fail to have an attorney appear to represent your interests, the case may proceed without your participation and may result in a judgment adverse to your interests.

The notice was addressed to "WRIGHT JC SUITES LLC 67 WEST STREET SUITE 401-C6 BROOKLYN, NY 11222," was sent by regular mail, and was not returned.

Our court rules provide that in local property tax cases, every defendant *may* but need not file an answer.  R. 8:3-2(b) (emphasis added).  In the present case, Defendant did not respond to the complaint, did not respond to the notice sent by the Tax Court Management Office, has not had an appearance filed by an attorney, and has not filed an answer.

Based on the foregoing, on December 1, 2023, the court issued an Order barring Defendant from raising defenses for failure to appear in court or otherwise

---

[8] Except in the instance of limited liability partnerships for the practice of law.

comply with the notice issued by the Tax Court Management Office. The Order also scheduled a proof hearing for August 9, 2024. The Order was sent by regular mail to Defendant. It was returned to the court with a "RETURN TO SENDER ATTEMPTED NOT KNOWN UNABLE TO FORWARD" stamp postmarked January 22, 2024. The court received it on February 16, 2024.

The court adjourned the proof hearing at the request of Municipality.

A second Order was sent to the Defendant on January 16, 2025, rescheduling the proof hearing to April 11, 2025. USPS returned this mailing with the same "RETURN TO SENDER ATTEMPTED NOT KNOWN UNABLE TO FORWARD" stamp postmarked February 18, 2025. The court received it on February 25, 2024.

Both the December 1, 2023 Order and the January 16, 2025 Order sent by the court had an incorrect suite address of "4-1-C6" instead of "401-C6."

On March 7, 2025, and on July 28, 2025, the court sent notices to Defendant at the correct address rescheduling the proof hearing. USPS has not returned either of those mailings.

On June 24, 2025, the Jersey City tax collector certified that the owner of record was still Wright JC Suites LLC, with a mailing address of 67 West Street Ste 410-C6 Brooklyn, New York 11222. The tax collector further certified that all correspondence from the tax collector's office, including but not limited to property

9

tax bills, are sent to that address, and that to date all property tax payments are current, except for municipal charges related to water/sewer assessments.

The court finds that Municipality has identified the appropriate party/defendant, and it has met the pleadings and proof of service requirements mandated by the court rules. Municipality served defendant at the last known address as it appears on the taxing district tax duplicate. The court finds that it is the taxpayer that has the obligation to maintain an accurate mailing address on the tax roll, and it is not a municipality's obligation to hunt down a taxpayer in the taxing district for purpose of service of process in a tax appeal.

The court makes these findings with the acknowledgment that the statutory and rule requirements of the use of the USPS to effectuate service may be outdated in 2025. For almost two decades, business communications have increasingly relied upon electronic mail, to the point where individuals are now charged a fee by private entities for the delivery of business records through the postal system. However, until such time the service-of-process requirements are updated to reflect or be compatible with current business practices, the onus is on the owner to provide an address to the municipality to effectuate service of process. Perhaps with the issuance of this opinion, the legislature and municipalities will consider

implementing an option for delivery of process by email to coexist with the use of the USPS.[9]

On August 25, 2025, the court issued an Order to Show Cause notifying Defendant of the expert appraisal report submitted by Municipality in support of default judgment. The court set September 19, 2025, as the date for Defendant's response. The court also sent the Order to Trystone. Neither Defendant nor Trystone responded.

Given the above, the court will now proceed to resolution of the consequences of Defendant's nonappearance, and the merits of Municipality's tax appeal.

Procedures in the Tax Court are governed by New Jersey Court Rules IV[10] and VIII. There is no provision in Rule VIII for default in a local property tax appeal. In certain circumstances, Rule VIII adopts provisions from Rule IV governing civil

---

[9] Another option would be the adoption of a court rule similar to Federal Rule of Procedure 4(d) that allows service by regular mail but provides that if the defendant does not acknowledge service and personal service has to be effectuated, the cost of personal service can then be shifted to the defendant, so as not to place the financial burden on the municipality.

[10] R. 4-1. The rules in Part IV, insofar as applicable, govern the practice and procedure of civil actions in the Superior Court, Law and Chancery Divisions, and the surrogate's courts and the Tax Court except as otherwise provided in Part VI and Part VIII.

practice[11]. However, in the context of a local property tax appeal, the default provisions of Rule IV are inapplicable because they contemplate the mandatory filing of an answer by a defendant.

In the absence of a default provision, the court proceeds to R. 8:8-4, which states:

> If any party fails to appear the court may order any one or more of the following:
>
> (a)In the absence of an appearance by a plaintiff, dismiss the complaint;
>
> (b) In the absence of an appearance by a defendant
>
> (1) proceed to hear the matter on the designated date;
> (2) dismiss the counterclaim, if any;
>
> (c) Take such other action authorized by R. 1:2-4(a) as it shall deem appropriate.

---

[11] R. 8:2 conferring jurisdiction to the Tax Court pursuant to R. 4:3-4(a) for matters with issues as to which expertise in taxation is desirable; R. 8:3-4 referencing R. 4:57 regarding contents of a complaint; R. 8:3-6 requiring that an Answer filed in Tax Court conform to the requirements of R. 4:5-3; R. 8:3-8 requiring that amendments to conform to the evidence be permitted in accordance with R. 4:9-2; R. 8:4-3 specifying the time for filing of all pleadings other than the complaint be prescribed by R. 4:6-1; R. 8:5-4 requiring that service of the Complaint be made personally or by certified or registered mail , return receipt requested, as provided in R. 4:4-4; R. 8:6-1(a) stating that discovery may be taken in accordance with the provisions of R. 4:10-1 through R. 4:18-2 and R. 4:22 through R. 4:25; R. 8:6-3 adopting the provision of R. 4:23-5 relating to discovery; R. 8:7 with respect to the governing provision of R. 4 with respect to motions; R. 8:9-1 referencing R. 4:42-1 regarding form of judgment; R. 8:10 referencing R. 4:49-1 (motions for new trials) and R. 4:49-2 (motion to alter or amend a judgment or final pleading).

R. 1:2-4(a) provides that if without just excuse or because of failure to give reasonable attention to the matter, no appearance is made on behalf of a party on the call of a calendar, on the return of a motion, at a pretrial conference, settlement conference, or any other proceeding scheduled by the court, or on the day of trial, the court may order the striking of the answer and the entry of judgment by default. Thus, the court finds that by virtue of R. 1:2-4(a), the consequence of the absence of a taxpayer defendant is to proceed with the entry of default judgment.

Furthermore, R. 8:8-1 allows the court to exercise its discretion to hear a tax appeal by submission and without trial. As to this tax appeal, the court has reviewed Municipality's evidentiary submissions and is satisfied that the evidence is adequate to proceed without the necessity or expense of testimony from Municipality's fact and expert witnesses. In the absence of rebuttal or contradiction, the evidence provided to the court is sufficient to allow the determination of default judgment to proceed by submission and without hearing.[12]

The court set September 19, 2025, as the date for determination with notice to both parties.

---

[12] Precedence for the submission of a certified real estate appraiser report in lieu of testimony can be found in R. 4:94-2.

## II. Legal Analysis

The court first addresses the issue of discrimination. The requirement of equal treatment is mandated by the New Jersey Constitution, which specifies that all property be assessed for taxation under general laws, by uniform rules and in accordance with a single standard of value. N.J. Const. art. 8, § 1(1). If such equal treatment is not given to the taxpayer, the taxpayer is entitled to judicial relief. Piscataway Assoc., v. Piscataway Twp., 73 N.J. 546, 556 (1977). Relief from such assessment discrimination is governed by Chapter 123.

Discrimination, within the context of local property taxation, arises when a taxpayer's property is assessed at a value that results in an effective tax rate inconsistent with the standard required by law. In non-revaluation years, when Chapter 123 applies, an assessment may be increased if the Tax Court finds that the ratio of assessed to true value falls below the lower end of the common level range. In these circumstances, the underassessment means the taxpayer is remitting less than their proportionate share of the municipal tax burden, effectively shifting a greater obligation onto other property owners.

A common argument posited by taxpayers in response to municipal claims of underassessment is that the municipality does not experience a tangible loss because of a single underassessment. Because municipal budgets are funded in full, their argument continues, any shortfall attributable to a particular property necessarily

results in a marginally increased share borne by the remainder of the taxpayers. In this way, the municipality itself is always made whole, while the remaining constituents absorb the difference created by the underassessment.

However, such reasoning misconstrues the role and nature of the municipality in the tax context. A municipality exists not as a profit-seeking beneficiary but as a collective body acting on behalf of its residents and taxpayers. The constitutionally enshrined principle, and the mandate of the Tax Court, is to ensure that each taxpayer pays no more and no less than their lawful portion of the municipal budget. If a property is underassessed, the resultant deficit, though initially abstract at the municipal level, is in reality absorbed by the other property owners of the same municipal body who are thus compelled to pay more than their fair share.

To accept the proposition that a municipality cannot suffer discrimination in cases of underassessment would render worthless the statutory and constitutional mechanisms that permit municipalities to challenge inequitable assessments. It would negate the legislative grant permitting reverse appeals by municipalities and compromise the integrity of the equitable taxation system.

Therefore, this court holds that discrimination is established where the municipality demonstrates, through evidence and application of Chapter 123, that a property is underassessed to the detriment of other taxpayers. In so holding, this

court affirms its charge to safeguard the principle of tax uniformity, ensuring that no individual taxpayer's burden is unjustly shifted to others.

The court now turns to valuation.

To determine whether the Subject Property is underassessed the court begins its analysis with the well-established principle that "[o]riginal assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Mountain Lakes Borough, 18 N.J. Tax 364, 373 (Tax 1998); see also Byram Twp. v. Western World, 111 N.J. 222 (1988) (stating "[w]hile a municipality's original assessment is entitled to a presumption of validity, this presumption attaches to the assessment of the County Board when it is the determination of that body that is challenged before the Tax Court.").

The presumption of correctness is not a mere evidentiary mechanism used solely to allocate the burden of proof. Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985). Rather, the presumption expresses the view "that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law." Ibid. (citing Powder Mill, I Assocs. v. Township of Hamilton, 3 N.J. Tax 439 (Tax 1981)).

In determining whether the presumption of correctness has been overcome, the court should weigh and analyze the evidence employing the evidentiary standard that evidence must be "definite, positive and certain in quality and quantity to

overcome the presumption." Pantasote Co., 100 N.J. at 413 (quoting Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105 (1952)). In order to overcome the presumption, the evidence "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters., LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003) (quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div. 2000), certif. denied, 165 N.J. 488 (2000)).

Municipality submitted the certified report of a real estate appraiser ("Expert"). The Expert currently serves as the Tax Assessor for both Wall Township and the Borough of Manasquan and is a Director at the Associated Appraisal Group. The Expert has qualified as an expert witness in the field of real estate appraisal in many courts, including the Tax Court, and he is also a State certified appraiser in New Jersey and Pennsylvania, and is an associate member of the Appraisal Institute.

An inspection of the Subject Property took place on March 26, 2025,[13] and the Expert prepared a report dated March 28, 2025, summarizing the data considered and the basis for his value conclusion.

---

[13] The Expert did not conduct the inspection himself. An agent under his authority performed the exterior site inspection and took photographs.

The court finds that Municipality produced sufficient cogent evidence to overcome the presumption of validity attached to the assessment. The court concludes that Municipality has raised a debatable question regarding the correctness of the assessment. Municipality identified four comparable sales and included necessary adjustments to make each sale and comparable property as close to identical to the Subject Property.

Having found the presumption of correctness overcome, the court must determine the true market value of the Subject Property as of October 1, 2022, based on the evidence in the record, which is limited to Municipality's proofs.

The court acknowledges that historically, there are very few reverse/increase tax appeals filed by municipalities. Most local property tax appeals are filed by the taxpayer with notice to the municipality, the county board of taxation, and the municipality's assessor. These are often referred to as affirmative appeals as they seek reduction of the assessment.

Since approximately 2012, the Tax Court has docketed an increased number of tax appeals filed on behalf of municipalities seeking to increase a property's assessment. Many of the defendants in reverse appeals are entities required to be represented by legal counsel. The prevailing cause of default judgment cases in the Tax Court involves defendants who do not respond and do not hire an attorney.

Generally, the contested local property tax appeal involves the production of persuasive evidence at trial establishing the true market value of the property in question implementing a "preponderance of the evidence" burden of proof. This, however, is not the applicable burden of proof in determining default judgment.

The leading case in the context of a default judgment, Heimbach v. Mueller, id., holds that the burden of proof is less than the civil trial standard of "preponderance of the evidence," and the court is not to engage in a "weighing" of the evidence. Instead, a plaintiff must adduce proofs which demonstrate that the facts alleged "might have been the case" or that they could conceivably be proved at trial, and that, if proved, they would establish the legally required elements of plaintiff's claim for relief. Heimbach, 229 N.J. Super. at 23.

Case law relating to burden of proof in default judgment hearings is notably sparse and primarily discussed in unpublished Appellate Division decisions. This is not surprising given that such an appeal would only occur in instances where the plaintiff was unsuccessful at the trial court level.

When determining default judgment, it is recognized that a trial court imposing a preponderance standard may be imposing too heavy a burden on a plaintiff and giving an improper benefit of the doubt as to every issue to the defaulted defendant. Fairness dictates that judgment may only be denied after a defendant's default where a court finds that "some necessary element of plaintiff's prima facie

case was missing or because plaintiff's claim was barred by some rule of law whose applicability was evident either from the pleadings or the proofs presented." Heimbach, 229 N.J. Super. at 23-24. A court should ordinarily only apply the prima facie standard to plaintiff's evidentiary submissions or hearing, thus not weighing evidence or finding facts but only determining bare sufficiency. See Kolczycki v. City of East Orange, 317 N.J. Super 505, 514 (App. Div. 1999).

Applying this reduced burden of proof and having found that the presumption of correctness has been overcome, the court now considers the evidence in the record in support of valuation.

### III. Analysis of Evidence

To prove its claim that the Subject Property is underassessed, Municipality must provide the court with evidence to indicate true market value exceeding the Chapter 123 Lower Limit ratio of 70.47%, which results in an implied market value of $486,165.

In support of its request for default judgment, the court will consider the evidence provided in the Expert's March 28, 2025 report.

After reviewing the current market trends, past market activity, actual supply and demand for like-properties, municipal zoning, and neighborhood compatibility, the Expert found that the Subject Property's highest and best use, as improved, was consistent with its continued use as a residential property. The Expert also

concluded that the highest and best use of the Subject Property, if vacant, would be for the continued use as a residential lot. Under the four (4) part test of the highest and best use,[14] the Subject Property's continued use as a residential dwelling satisfied all four (4) elements.

When initiating the appraisal on the Subject Property, the Expert considered the three appraisal methods: the Sales Comparison Approach; the Income Capitalization Approach; and the Cost Approach. The Expert chose not to apply the Cost nor Income Capitalization Approach citing that the Subject Property type is not typically valued based on its income generating purpose. Instead, the Expert chose to utilize the Sales Comparison Approach.

The Sales Comparison approach requires recent sales similar to the Subject Property, preferably in a nearby location. The approach necessitates that all listings, offerings, and rental data be considered as factors that could affect current market conditions. While each sale is analyzed and compared to the Subject Property, adjustments are made where comparable properties are dissimilar in aspects including location, time of sale, size of lot, and condition, to name a few. The goal

---

[14] Highest and Best use may be defined as the reasonably probable and legal use of vacant land or an improved property, that is legally permissible, physically possible, appropriately supported, financially feasible, and that results in the highest value. See APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE, 305 (15th ed. 2020).

is to make each comparable sale nearly equal to the Subject Property in an effort to narrow the value range supported by sound and reasonable comparisons.

The Expert selected four (4) recent sales that he believed most closely reflected the Subject Property. The properties used for comparison are listed below:

| Property | Subject Property | Sale Comp. 1 | Sale Comp. 2 | Sale Comp. 3 | Sale Comp. 4 |
|---|---|---|---|---|---|
| Address, Jersey City | 12 Wright Avenue | 21 Wright Avenue | 62 Wright Avenue | 10 Bryant Avenue | 32 Wallis Avenue |
| Date of Sale | April, 2017 | February, 2022 | July, 2022 | January, 2022 | September, 2022 |
| Sale Price | $210,000 | $520,000 | $675,000 | $600,000 | $825,000 |
| Sale Price/sq. ft. of GLA | $108.25 / sq. ft. | $390.98 / sq. ft. | $472.22 / sq. ft. | $401.07 / sq. ft. | $689.80 / sq. ft. |
| Lot Size | 1,999 sq. ft. | 1,668 sq. ft. | 1,999 sq. ft. | 2,500 sq. ft. | 1,999 sq. ft. |
| Gross Living Area | 1,940 sq. ft. | 1,330 sq. ft. | 1,580 sq. ft. | 1,496 sq. ft. | 1,196 sq. ft. |
| Street Frontage | 20 feet | 16.67 feet | 20 feet | 25 feet | 40 feet |
| Bathrooms / Bedrooms | 2 / 6 | 2.5 / 4 | 2 / 4 | 2 / 2 | 2 / 3 |
| Amenities | 50% finished Basement | None | Unfinished Basement | Unfinished Basement | Unfinished Basement / 3-Car Detached Garage |
| Adjustments | n/a | 42.04% | 10.50% | 27.29% | 25.97% |
| Adjusted Price | n/a | $827,250 | $768,250 | $832,480 | $1,060,000 |

Considerations that required adjustments included the timing of the sale; the lot size; age/condition-quality of construction; number of bathrooms; total Gross Living Area; basement conditions, or lack thereof; and availability of garage parking.

All four (4) comparable sales closed between January and September of 2022, when there was an increasing marketplace at a rate of 12% per annum, requiring values to be adjusted upward. Because comparable sales 1, 3, and 4 had not been renovated and were in inferior condition, their values were adjusted upward. Half bathrooms were adjusted upward $15,000 where necessary, and any square footage more than the Subject Property was adjusted upward $20.00/square foot. Exclusive parking was afforded two different values based on kind: $20,000 per car utilized for garage parking; $10,000 per car for off-street parking. Finally, the Expert adjusted sales $175.00 per square foot of gross livable area where necessary.

Prior to adjustment, the sales reflected a range of $520,000 to $825,000. Applying adjustments, the Expert concluded the range of value was between $768,000 to $1,060,000 (rounded). When considering the facts and specific features, conditions, and amenities that the Subject Property provided, the Expert concluded the value of the Subject Property to be $850,000 as of October 1, 2022.

Municipality's evidence of value relies upon application of the Sales Comparison Approach, which is generally accepted as an appropriate method of estimating value for family residences. See Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 377 (App. Div. 2001); APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE, 353 (15th ed. 2020) (stating "[t]he sales comparison approach is applicable to most type of real property interest when there are sufficient recent, reliable transactions to indicate value patterns or trends in the market."). This method of valuation has been defined as a procedure in which a value indication is derived by comparing the property being appraised to similar properties that have been sold recently, selecting the most relevant units of comparison, and adjusting the price of each comparable, reflecting how it differs to equate it to the subject property. APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE, at 355. A purchaser in the marketplace on October 1, 2022, would determine the value of the Subject Property through the use of comparable sales. The court finds that this approach best determines the true market value of Defendant's property.

After careful consideration of the record, the court finds the Expert's opinion of the Subject Property's true market value supported by the evidentiary record. His comparable sales were all similar use properties and are sales which occurred between only nine (9) months in 2022. His analysis contains appropriate

adjustments to the sales prices of the comparable sales and appropriate estimates of the cost to replace or reproduce the improvement on the land.

The court finds the true market value of Block 10302, Lot 3 as of October 1, 2022, to be $850,000. Municipality has proven its claim that the Subject Property is underassessed, as this value exceeds the 2023 Chapter 123 Lower Limit ratio value of 70.47%, with an implied market value of $486,165. Applying the Chapter 123 average ratio of 0.8291, the court finds an assessment value for the 2022 tax year to be $704,735, which it will round to $705,000.

## IV. Conclusion

Municipality has proven its claim that the Subject Property is underassessed, as this value exceeds the 2023 Chapter 123 Lower Limit ratio value of 70.47%, with an implied market value of $486,165.

Applying the Chapter 123 Average ratio of 82.91% to the Subject Property's value of $850,000, the court finds an assessment value for the 2023 tax year to be $704,735 which the court will round to $705,000.

Accordingly, a judgment revising the Subject Property's 2023 tax year assessment will be entered as follows:

Block 10302, Lot 3

| | |
|---|---|
| Land: | $ 180,000 |
| Improvement: | $ 525,000 |
| Total: | $ 705,000 |

Contemporaneously with the issuance of this opinion, the court shall enter the above-referenced judgment.

/s/ Mary Siobhan Brennan
Hon. Mary Siobhan Brennan, J.T.C.
